Michael A. Caddell
Cynthia B. Chapman
Gregory K. Evans
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX 77010
Telephone 713.751.0400
Facsimile: 713.751.0906
mac@caddellchapman.com

Attorneys for Plaintiffs

*Additional Counsel on Signature Page*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **DAVE DONACHY, et al.,** | ) | **Civ. Act. No. 1:10-cv-04038-RMB-KMW** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **INTRAWEST U.S. HOLDINGS, INC., AND PLAYGROUND DESTINATION PROPERTIES, INC.,** | ) ) ) ) | **PLANTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| | ) | |
| **Defendants.** | ) | **CLASS ACTION** |
| ———————————— | ) | |
| | | **JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**PAGE**

Table of Authorities .................................................................................iv

Preliminary Statement................................................................................1

Factual Background ....................................................................................3

I.      Named Plaintiffs ............................................................................3

II.     Defendants ......................................................................................5

III.    Cherokee and the Forum Selection Clause ....................................5

IV.     Turks & Caicos Islands (TCI) .......................................................6

Arguments and Authorities .......................................................................8

I.      Forum Selection Clause Cannot Be Enforced Here For Numerous
        Reasons...........................................................................................8

        A.      Third Circuit Law On Non-Signatories and Forum Selection
                Clauses ................................................................................8

        B.      Defendants Do Not Even Argue Agency, Third-Party
                Beneficiary, or Employer/Employee .................................11

        C.      Defendants Rely Almost Exclusively On *Sahara Sam's*, Which
                Involved Far Different Facts .............................................13

                1.      Defendants Are Not Nearly as "Closely Related" to the
                        Purchase Contract As Non-Signatories in *Sahara
                        Sam's* ......................................................................14

                2.      Unlike *Sahara Sam's*, No Defendant Here Is a
                        Signatory .................................................................15

                3.      Other Case Cited by Defendants Is Also Inapposite ...............18

4.      Defendants Failed to Distinguish *D'Elia*................................19

5.      Unlike *Sahara Sam's*, Enforcing Clause Here Would
        Contravene New Jersey Public Policy Due to Extreme
        Problems in TCI....................................................................21

6.      Unlike *Sahara Sam's*, Enforcing Clause Here Would
        Deprive Plaintiffs of Their Day In Court................................23

II.   Defendants' Forum Non Conveniens Argument Fails For Numerous
      Reasons......................................................................................24

      A.    Defendants Failed to Offer Any Proof TCI Is Adequate....................25

      B.    Defendants Cannot Overcome Plaintiffs' Choice of Their
            Home Forum....................................................................28

      C.    Private and Public Interest Factors Do Not Favor Dismissal ............29

            1.      Private Interest Factors Heavily Favor New Jersey ................30

            2.      Public Interest Factors Heavily Favor New Jersey ................32

Conclusion................................................................................................33

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

## <u>CASES</u>

*Affiliated Mortgage Protection, LLC v. Tareen*,
   No. 06-4908, 2007 WL 203947
   (D.N.J. Jan. 24, 2007) ...............................................................................16

*Air Master Sales Co. v. Northbridge Park Co-Op, Inc.*,
   748 F. Supp. 1110 (D.N.J. 1990).........................................................11, 13

*Ali v. D.O.C.*,
   No. 08-2425, 2008 WL 5111274, at *1
   (D.N.J. Nov. 25, 2008).............................................................................12

*Am. Cynanamid Co. v. Picaso-Anstalt*,
   741 F. Supp. 1150 (D.N.J. 1990)..............................................................24

*Burke v. Quartey*,
   969 F. Supp. 921 (D.N.J. 1997) ...........................................................25, 27

*Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*,
   709 F.2d 190 (3d Cir. 1983).......................................................................23

*D'Elia v. Grand Caribbean Co., LTD.*,
   No. 09-1707, 2010  WL 1372027
   (D.N.J. Mar. 30, 2010).........................................................................*passim*

*Dayhoff, Inc. v. H.J. Heinz, Co.*,
   86 F.3d 1287 (3d Cir. 1996).................................................................8, 21

*Doe v. Sun International Hotels, Ltd.*,
   20 F. Supp.2d 1328 (S.D. Fla. 1998).........................................................32

*Dravo Corp. v. Robert B. Kerris, Inc.*,
   655 F.2d 503 (3d Cir. 1981).......................................................................11

*DuPont v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*,
   269 F.3d 187 (3d Cir. 2001) ........................................................................10

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ....................................................................................9

*Four River Exploration, LLC v. Bird Resources, Inc.*,
   No. 09-3158, 2010 WL 216369
   (D.N.J. Jan. 15, 2010) ............................................................ 10, 16, 18, 19

*Homa v. Am. Express Co.*,
   558 F.3d 225 232 (3d Cir. 2009) ...........................................................22, 33

*Huffmaster v. Robinson*,
   534 A.2d 435 (N.J. Super. Ct. Law Div. 1986) .........................................22

*Lacey v. Cessna Aircraft Co.*,
   862 F.2d 38 (3d Cir. 1988)........................................................ 24, 25, 28, 30

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) .......................................................................................21

*Manu Intern., S.A. v. Avon Products, Inc.*,
   641 F.2d 62 (2d Cir. 1981) .........................................................................33

*Miller v. Boston Scientific Corp.*,
   380 F. Supp. 2d 443 (D.N.J. 2005).............................................................29

*Moneygram Payment Sys. v. Consorcio Oriental, S.A.*,
   65 F. App'x 844 (3d Cir. 2003) ..................................................................21

*Nieminen v. Breeze-Eastern*,
   736 F. Supp. 580 (D.N.J. 1990) .................................................................27

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235, 241 (1981).............................................................. 25, 26, 28

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   7 F.3d 1110 (3d Cir. 1993)...........................................................................9

*Rieder Communities, Inc. v. Twp. of N. Brunswick*,
    546 A.2d 563 (App.Div. 1988) ...................................................................12

*Sahara Sam's Oasis, LLC v. Adams Companies*, Inc.,
    No. 10-0881 (RMB/AMD), 2010 WL 3199886
    (D.N.J. Aug. 12, 2010)....................................................... 2, 10, 13, 15, 17

*Technology Development Co., Ltd. v. Onischenko*,
    536 F. Supp. 2d 511 (D.N.J. 2007).......................................................25, 27

*The Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972)........................................................................................17

*Washington v. Correctional Medical Services*,
    No. 05-3715, 2006 WL 1210522, at *1
    (D.N.J May 1, 2006) ..................................................................................12

*Weisenberger v. BT Ams., Inc.*,
    No. 09-4828, 2010 WL 1133473, at *1
    (D.N.J. Mar. 22, 2010)...............................................................................23

## <u>PRELIMINARY STATEMENT</u>

This is a dispute between eleven individual Named Plaintiffs from New Jersey, New York, and Connecticut, and two corporate Defendants based in Denver, Colorado.  Based on a forum selection clause in a contract between Plaintiffs and a third party, and the doctrine of *forum non conveniens,* Defendants argue this case belongs over a thousand miles away in the Turks & Caicos Islands ("TCI").  Defendants fail to mention that TCI was seized by the British government in August 2009 due to widespread political corruption, in what the former premier called a "coup," which, as a consequence, resulted in the suspension of the TCI Constitution, including the right to trial by jury.  Furthermore, Plaintiffs chose to file suit in New Jersey because this forum is convenient under the circumstances.

Defendants ask this Court to enforce the forum selection clause even though neither one of them was a signatory to the sales contract containing the clause, and even though Plaintiffs are not suing for breach of that contract.  Further, the signatory (the developer of the Veranda resort) *is not a defendant in this case*.  Thus, the parties to this case did not agree to litigate in TCI.  Defendants did not cite a single case where a court enforced a forum selection clause even though no defendant in the case was a signatory.

Instead, Defendants rely almost exclusively on one case, *Sahara Sam's Oasis, LLC v. Adams Companies, Inc.*, in arguing that they, as non-signatories, can enforce the clause because they are "closely related" to the contract containing it. However, the non-signatory defendants in *Sahara Sam's* were far more "closely related" to the contract.  The contract was actually printed on the *letterhead* of one non-signatory, who was expressly referenced by name in the contract *six* times as it had certain specified obligations under the contract.   Further, the other non-signatory, also mentioned by name in the contract, also had certain obligations under the contract.   Hence, both non-signatories in *Sahara Sam's* were integrally involved in providing the promised goods and services.  They therefore easily satisfied the "closely related" to standard.   In stark contrast, the subject contract here never references either Defendant, and neither Defendant had any role to play in performing under the contract (*i.e.*, constructing a condominium for each Plaintiff).  Therefore, Defendants do not have standing to enforce the clause.

Moreover, the clause cannot be enforced anyway because doing so would contravene New Jersey public policy, and Plaintiffs would for all practical purposes be deprived of their day in court if forced to proceed in a

forum with which neither Plaintiffs nor Defendants have any current connection, and whose Constitution has been suspended.

Defendants cannot gain dismissal due to *forum non conveniens* because they failed to satisfy their burden to establish that TCI is an adequate alternative forum, a threshold issue. To meet this burden, they had to offer evidence of TCI's adequacy as an alternative forum (*e.g.*, through affidavits); however, they offered *no evidence* at all. Because they failed to satisfy this threshold issue—likely due to the fundamental problems in TCI—their *forum non conveniens* argument fails at the outset.

In sum, Defendants' motion to dismiss this case—involving eight New Jersey residents suing two U.S. companies—so that it may proceed far away in TCI should be denied.

## FACTUAL BACKGROUND

### I.    NAMED PLAINTIFFS

Named Plaintiffs Dave and Carol Donachy of Moorestown, New Jersey, invested a substantial part of their retirement savings in a Veranda condominium in July 2004. *See* Plaintiffs' First Amended Complaint ("FAC") ¶¶ 36-41. They did so based on the representations of Defendants, Intrawest U.S. Holdings and Playground Destination Properties, Inc. (collectively "Defendants"), that Veranda was a good real-estate investment

and that their $70,180 deposit would be "held in an interest-bearing trust account, ensuring [they were] protected from any unforeseen circumstances, right through the construction period." *Id*. Named Plaintiffs Anthony and Susan DiMeglio of Princeton, New Jersey, did the same, purchasing a Veranda condo in May 2003 with a deposit of $85,980. FAC ¶¶ 48-53. Likewise, Richard and Suzanne Kucharski of Franklin Lakes, New Jersey, along with Andrew and Charlene Wingfield of Franklin Lakes, Vincent and Donna LaRocca of Scarsdale, New York, and Ali Imtiaz of Bethel, Connecticut, together purchased two Veranda condos in July 2004 with a deposit of $135,180. FAC ¶¶ 60-109.

Thereafter, there were numerous problems with the construction of Veranda, ending in the bankruptcy of the developer, Cherokee Limited ("Cherokee"). Ultimately, Named Plaintiffs' substantial deposits were not safe from any and all possible circumstances, as promised by Defendants. Cherokee went bankrupt and Plaintiffs lost their deposits (which total approximately $10 million class wide). FAC ¶¶ 28-30.[1] Through this lawsuit, Plaintiffs seek to recover their lost deposits (and other related out-

---

[1] Defendants contend that Plaintiffs did not plead that they never received their condos. *See* Defs.' Mem. at n.2. This should have been obvious from the Amended Complaint, but in an abundance of caution, Plaintiffs expressly state that they did not receive their condominiums (nor their deposits), which is why they have filed this lawsuit.

of-pocket losses).  *Id*. ¶ 31.  They chose to sue in New Jersey out of convenience because they reside in New Jersey.

## II.    DEFENDANTS

Defendants, Intrawest U.S. Holdings and Playground Destination Properties, Inc. (collectively "Defendants"), are both incorporated in the United States and headquartered in Denver, Colorado.  Defs.' Mem. at 3.  The developer, Cherokee, retained Defendants to market the Veranda resort.  *See id*.  Defendants did so through phone calls and e-mails primarily to their existing clientele who had purchased other resort properties owned and/or operated by the Intrawest family of companies.  FAC ¶ 23.

## III.    CHEROKEE AND THE FORUM SELECTION CLAUSE

The forum selection clause that Defendants seek to invoke here is contained in a form contract between Cherokee, the developer of the Veranda resort, and each of the Named Plaintiffs—the Offer and Purchase Agreement ("Purchase Contract").  Cherokee inserted the forum selection clause because it was incorporated in TCI and the resort was located there.  Cherokee is not a defendant here because it filed for Bankruptcy protection and was liquidated several years ago.

## IV.   TURKS & CAICOS ISLANDS (TCI)

TCI is a British Overseas Territory located near the Bahamas.   In August 2009, the British government seized control over TCI based on widespread political corruption.[2]   Britain suspended the government and imposed direct rule.[3]   This resulted in the suspension of the TCI's ministerial government and its House of Assembly for at least two years.[4]   This also resulted in the suspension of the Constitution, including the constitutional right to trial by jury.[5]

This action was taken after a commission of inquiry completed its investigation that began in July 2008, an investigation that found

---

[2]   *See, e.g., Britain Imposes Direct Rule of Turks and Caicos Isles*, CNN.com/Europe, August 15, 2009 (attached as Ex. A); *UK Imposes Turks and Caicos Rule,* BBC News, August 14, 2009 (Ex. B); *Britain Seizes Control of Scandal-Hit Dependency*, The Independent, August 15, 2009 (Ex. C).

[3]   *See, e.g., Britain Imposes Direct Rule of Turks and Caicos Isles*, CNN.com/Europe, August 15, 2009 ("Britain says it has suspended the government of the Turks and Caicos Islands and imposed direct rule after allegations of systemic corruption and 'serious dishonesty'") (Ex. A); *UK Imposes Turks and Caicos Rule,* BBC News, August 14, 2009 ("[t]he administration of the UK territory in the Caribbean has been suspended for up to two years") (Ex. B).

[4]   *See, e.g., Britain Imposes Direct Rule of Turks and Caicos Isles*, CNN.com/Europe, August 15, 2009 ("British Foreign Office Minister Chris Bryant said he instructed the British governor of the island territory to suspend the ministerial government and the House of Assembly for as long as two years") (Ex. A); *Former Premier Loses Appeal in UK*, TCI Sun, August 13, 2009 ("[i]n summary, it will abolish the right to jury trial and it will suspend representative government by dissolving the House of Assembly and removing all elected officials, for a period of at least two years") (Ex. D.).

[5]   *See, e.g., Britain Imposes Direct Rule of Turks and Caicos Isles*, CNN.com/Europe, August 15, 2009 ("order also suspends the right to trial by jury") (Ex. A).

"information in abundance pointing to a high probability of systemic corruption and/or serious dishonesty" in TCI.[6]  A widely-circulated English newspaper reported the suspension of the government and Constitution as follows:  "Britain imposed direct rule on the Turks and Caicos islands yesterday [August 14, 2009], suspending the constitution, dismissing the Parliament, handing power to a London-appointed governor and halting the right to trial by jury."[7]  One of the former premiers of TCI called this action by the British government a "coup."[8]

At present, the Constitution is still suspended and will likely remain so until at least 2012, when the interim government hopes to have achieved certain milestones that will make elections possible.[9]

_____

[6]  *See, e.g., Britain Imposes Direct Rule of Turks and Caicos Isles*, CNN.com/Europe, August 15, 2009 ("the commission's report,  delivered May 31, found 'information in abundance pointing to a high probability of systemic corruption and/or serious dishonesty'") (Ex. A)

[7]  *Britain Seizes Control of Scandal-Hit Dependency*, The Independent, August 15, 2009 (Ex. C).

[8]  *UK Imposes Turks and Caicos Rule,* BBC News, August 14, 2009 ("[[b]ut Mr. Williams, premier of the territory until direct rule was imposed, has described the UK government's actions as a 'coup'") (Ex. B).

[9]  *A Serious and Deteriorating Problem in  the Turks and Caicos Islands*, Website for Britain's Foreign and Commonwealth Office, December 9, 2010 (Ex. E).

## ARGUMENTS AND AUTHORITIES

## I.   FORUM SELECTION CLAUSE CANNOT BE ENFORCED HERE FOR NUMEROUS REASONS.

Defendants invoke the forum selection clause in the Purchase Contract even though neither Defendant is a signatory to it. There is no contract between Plaintiffs and Defendants; accordingly, the parties here did not contractually agree upon a litigation forum. Therefore, Defendants are *non-signatories* to the contract containing the forum selection clause they wish to enforce.

### A.   Third Circuit Law On Non-Signatories and Forum Selection Clauses.

One of the Third Circuit's seminal cases on this issue is *Dayhoff, Inc. v. H.J. Heinz, Co.*, 86 F.3d 1287 (3d Cir. 1996). That case involved several agreements among several parties, including a candy distribution agreement between Dayhoff (a U.S. candy distributor) and Heinz (an Italian candy maker). *See id.* at 1290. Heinz terminated the distribution agreement when it sold its business to Hershey. *See id.* at 1292. Dayhoff sued numerous parties in federal court in Pennsylvania in response, and Heinz, Hershey, and other defendants sought to enforce a forum selection clause in the distribution agreement that selected Cremona, Italy, as the litigation forum. *See id.* at 1293.

8

Citing U.S. Supreme Court precedent holding that a party cannot be compelled to arbitrate with another party, or to proceed in a specific forum, if it did not contractually agree with that other party to do so, the Third Circuit held that the forum selection clause "can be enforced only by signatories" to the distribution agreement. *Id*. at 1296 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)). The Court was troubled that a non-signatory (like Hershey) would have the option of accepting or rejecting a forum selection clause, and, accordingly, a signatory (like Dayhoff) would be forced to accede to the non-signatory's wishes. *See id*. at 1297.

The Court acknowledged it had previously permitted non-signatories to enforce arbitration clauses[10] based on an agency theory: "[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." *Id*. at 1296-97 (quoting *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993)). The Court held,

---

[10]   In considering cases involving arbitration clauses, the Court noted that the U.S. Supreme Court held that an arbitration clause is a specialized-kind of forum selection clause. *See Dayhoff*, 86 F.3d at 1298 n.9. Accordingly, courts in the Third Circuit often cite to cases involving arbitration clauses when analyzing a forum selection clause. *See, e.g., D'Elia v. Grand Caribbean Co., Ltd.*, No. 09-1707, 2010 WL 1372027, at *3 n.5 (D.N.J. Mar. 30, 2010).

however, that the agency theory was not present in the facts before it in *Dayhoff*. *See id*. at 1297.

Based on *Dayhoff*, the circumstances in which a non-signatory has standing to enforce a forum selection clause are limited. When analyzing whether a non-signatory has standing to enforce a forum selection clause, courts in the Third Circuit generally consider whether the non-signatory is "closely related" to the contract. *See, e.g., Sahara Sam's Oasis, LLC v. Adams Companies*, Inc., No. 10-0881 (RMB/AMD), 2010 WL 3199886 (D.N.J. Aug. 12, 2010); *Four River Exploration, LLC v. Bird Resources, Inc.*, No. 09-3158, 2010 WL 216369 (D.N.J. Jan. 15, 2010); *D'Elia v. Grand Carribean Co., Ltd.*, No. 09-1707, 2010 WL 1372027 (D.N.J. Mar. 30, 2010). A party that is sufficiently "closely related" to the contract is entitled to enforce its provisions (and be bound by its provisions) because that party is akin to a signatory to the contract. *See, e.g., DuPont v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001) (noting that a non-signatory cannot be bound to an arbitration clause "unless it is bound under traditional principles of contract and agency law to be akin to a signatory of the underlying agreement").

To be "closely related," the non-signatory must rely on an agency theory, be an intended third-party beneficiary, or rely on employer/employee

principles: "[i]n the Third Circuit, those circumstances in which a non-signatory party may enforce the forum selection clause are *limited*, often reserved to matters of agency or employment or to principles of common law contracts." *D'Elia*, 2010 WL 1372027 at \*5 (emphasis added).

### B.   Defendants Do Not Even Argue Agency, Third-Party Beneficiary, or Employer/Employee.

Neither Defendant makes any effort to argue that anything within the four corners of the Purchase Contract expressly confers them with standing to enforce its forum selection clause as an agent or employee of Cherokee (the signatory), or a third-party beneficiary.  Nor could they; the Purchase Contract does not mention either Defendant by name.[11]  Importantly, one provision *specifically identifies* the third parties that could gain standing to enforce the Purchase Contract:

> This Agreement shall be binding upon and inure to the benefit of the Parties hereto, their successors, heirs and permitted assigns.[12]  The Purchaser [plaintiffs] may not assign this Agreement to any other person or persons without first

---

[11]  "New Jersey courts have been hesitant to imply a third party beneficiary obligation unless the parties explicitly indicate that (1) the claimant is an intended beneficiary of the proposed arrangement and (2) that the claimant will have a direct claim under the contract." *Air Master Sales Co,* 748 F. Supp. at 1117 (D.N.J. 1990) (citing *Dravo Corp. v. Robert B. Kerris, Inc.*, 655 F.2d 503 (3d Cir. 1981)).  Here, the Purchase Contract neither expressly indicates that either Defendant is an intended third party beneficiary, nor provides them with a "direct claim" under the agreement.

[12]  Defendants do not contend that they are a successor, heir, or permitted assignee of the Purchase Contract.

obtaining written consent from the Seller [Cherokee LTD], such consent not to be unreasonably withheld.

*See* ¶ 15.6 of Purchase Contract (Exhibit B to FAC).

Defendants therefore cannot possibly be third-party beneficiaries given that the contract specifically identified such and Defendants are not among those identified. "To determine whether a third-party is an intended beneficiary, New Jersey courts look to whether the contracting parties have *expressly* intended for that third-party to receive a benefit which might be enforced in the courts." *Ali v. D.O.C.*, No. 08-2425, 2008 WL 5111274, at *5 (D.N.J. Nov. 25, 2008) (citing *Rieder Communities, Inc. v. Twp. of N. Brunswick*, 546 A.2d 563 (App.Div. 1988)) (emphasis added). By their silence, it is clear that Cherokee and Plaintiffs did not expressly intend for Defendants to be a third-party beneficiary.

This Court has repeatedly held that third parties who fail to demonstrate that they are intended third-party beneficiaries to a contract lack standing to enforce its provisions. *See Ali,* 2008 WL 5111274, at *5; *Washington v. Correctional Medical Services*, No. 05-3715, 2006 WL 1210522, at *5 (D.N.J May 1, 2006) (dismissing claim of a party that did "not provide any evidence to support an argument that the contract contains language that would make him an intended beneficiary with standing to

sue."). *See also*, *Air Master Sales Co. v. Northbridge Park Co-Op, Inc.*, 748 F. Supp. 1110, 1117-1118 (D.N.J. 1990).

### C. Defendants Rely Almost Exclusively On *Sahara Sam's*, Which Involved Far Different Facts.

Rather than relying on agency, third-party beneficiary, or employer/employee principles, Defendants instead rely solely upon this Court's decision in *Sahara Sam's Oasis, LLC v. Adams Companies*, Inc., No. 10-0881 (RMB/AMD), 2010 WL 3199886 (D.N.J. Aug. 12, 2010). However, the pertinent facts in that case are clearly distinguishable from the facts here. First, and foremost, the non-signatory defendants in *Sahara Sam's* were far more "closely related" to the contract containing the clause than Defendants are here. Second, unlike here, one of the defendants in *Sahara Sam's* was a signatory. Hence, at least one of the defendants had standing to enforce the clause, as the plaintiffs had contractually agreed with that defendant to the alternative forum.

Third, the alternative forum at issue in *Sahara Sam's* was Oklahoma, whereas the alternative forum here is TCI, which has been seized by the British government due to widespread political corruption. Therefore, unlike *Sahara Sam's*, dismissing this case so it may proceed in a forum like TCI will contravene New Jersey's strong public policy to protect its citizens from misrepresentations. Fourth, unlike Oklahoma, TCI is so gravely

13

inconvenient and troubled that Plaintiffs will for all practical purposes be deprived of their day in court if forced to proceed in TCI.

        **1.**      **Defendants Are Not Nearly as "Closely Related" to The Purchase Contract As the Non-Signatories in *Sahara Sam's*.**

Neither Defendant is at all analogous to the primary non-signatory in *Sahara Sam's*—Adams Companies, Inc. (Adams).  Although Adams was not a signatory, the contract containing the forum selection clause was printed on its *letterhead* (the contract at issue in *Sahara Sam's* is attached hereto as Ex. F.)  Moreover, the contract referred to "Adams" by name *six* different times, because Adams was integrally involved in providing the goods and services under the contract.  *See* Ex. F at 1-3.  Adams extended an express warranty and was obligated to contract with Teeter Engineering Group, P.A. ("Teeter," the other non-signatory), for Teeter to review certain technical drawings.  *See id.* at 2.  Thus, the other non-signatory (Teeter) was *also* referred to by name in the contract and also had certain specified obligations under the contract.  *See id*. at 2.

In sum, both Adams and Teeter were integrally involved, along with signatory Aaon, in providing the goods and services to plaintiffs in the contract.  Because Adams and Teeter were so heavily involved, they were akin to signatories to the contract.  Therefore, they satisfied the "closely

related" standard both as third-party beneficiaries and under agency principles.

In stark contrast, neither Defendant here is referred to even once in the Purchase Contract. There is no mention in the Purchase Contract of either Defendant providing goods or services to Plaintiffs under this Contract. Defendants do not claim that they had any role in providing what Plaintiffs bargained for under the contract (the construction of a condo). Hence, the facts concerning Defendants here are not at all like the facts concerning the non-signatories in *Sahara Sam's*.

### 2. Unlike *Sahara Sam's*, No Defendant Here Is a Signatory.

In *Sahara Sam's,* and in nearly all other cases Plaintiffs could find, at least one of the defendants in the case was a signatory to the contract containing the forum selection clause. In *Sahara Sam's*, defendant Aaon was a signatory. *Sahara Sam's*, 2010 WL 3199886 at *1. Thus, the plaintiff had contractually agreed with defendant Aaon to litigation in Oklahoma. The only issue was whether the presence of other defendants who were not signatories (Adams and Teeter) would defeat the clause. This Court enforced the clause as to all the parties in the case—which avoided the same litigation proceeding in two or three different jurisdictions—because, as discussed below, the non-signatories were "closely related" to the contract.

The facts here are far different.  Neither Defendant here is a signatory.
Plaintiffs here did not agree to litigation in TCI with either Defendant in this
case.   Accordingly, TCI is not a proper forum for the parties here and,
further, there is no risk that the litigation here would proceed in two different
jurisdictions, given Cherokee's liquidation.[13]

With one exception, in each case that Plaintiffs found where a court
permitted a non-signatory to enforce a forum selection clause there was at
least one signatory defendant.[14]  Plaintiffs could only find one case in the
Third Circuit where a court permitted a non-signatory to enforce a forum
selection clause even though no defendant in the case was a signatory, and
that case involved far different facts than those here.

In *Foley & Lewis Racing, Inc. v. Burling*, the court enforced a forum
selection clause in favor of defendant Marc Burling, who *signed* the contract
containing the clause in his capacity as *president* of the company.  No. 07-

---

[13]  In *Sahara Sam's*, the forum selection clause was asserted by three defendants in the
context of a motion to dismiss.  If all of the parties were not held to the forum selection
clause, it presumably would have resulted in one counter-claim remaining in this Court
and the other claims being transferred to Oklahoma. 2010 WL 3199886, at *2.  In
contrast, not enforcing the forum selection clause here will result in *all* of the claims
related to the sale of the Veranda deposits being litigated in this Court.

[14]  *Accord, Four River Exploration, LLC v. Bird Resources, Inc.*, No. 09-3158, 2010 WL
216369 (D.N.J. Jan. 15, 2010) (enforcing clause where one of defendants in case was a
signatory); *D'Elia v. Grand Caribbean Co., Ltd.*, No. 09-1707, 2010 WL 1372027
(D.N.J. Mar. 30, 2010) (same); *Affiliated Mortgage Protection, LLC v. Tareen,* No. 06-
4908, 2007 WL 203947 (D.N.J. Jan. 24, 2007) (same).

972, 2008 WL 544655 (D.N.J. Feb. 27, 2008).  Thus, although he was not a signatory in his individual capacity, he was a signatory in his professional capacity as president.  Hence, that case fits comfortably within the exceptions noted above involving agency and employer/employee.

The absence of a defendant who is a signatory is significant.  The U.S. Supreme Court's holding in *Bremen* that forum selection clauses are presumptively valid was based, in part, on the notion that contracting parties should be able to select their forum.  *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 11 (1972) ("[i]t is settled...that parties to a contract may agree in advance to submit to the jurisdiction of a given court").  That element is missing here because these parties did not contract with each other.

It is also worth noting that the plaintiffs in *Sahara Sam's*—who objected to enforcement of the clause—were also very differently situated than Plaintiffs here.  The plaintiffs in *Sahara Sam's* were *commercial* businesses located in New Jersey, who were forced to litigate their case in Oklahoma.[15]  *Sahara Sam's*, 2010 WL 3199886 at *1-2.  In sharp contrast, enforcing the clause here would require eleven *individuals* from New Jersey,

---

[15]  According to the complaint filed in *Sahara Sam's Oasis*, the defendant that was a signatory to the contract (Aaon) was based in Oklahoma, and defendants Adams and Teeter (the non-signatories that were bound by the forum selection clause) were based in North Carolina.  Here, in contrast, the signatory to the contract with plaintiffs (Cherokee) is based in TCI and no longer exists.

New York and Connecticut to litigate over one thousand miles away in TCI, a country deeply troubled and without a Constitution at the moment.

### 3. Other Case Cited by Defendants Is Also Inapposite.

The other case that Defendants rely upon, *Four River Exploration, LLC v. Bird Resources, Inc.*, No. 09-3158, 2010 WL 216369 (D.N.J. Jan. 15, 2010), involves facts so different from those here that it is clearly inapposite. *Four River* involved a plaintiff—who was a signatory—enforcing a forum selection clause against two defendants, a company and its president. *See id.* at *2. The president signed the contract on the company's behalf in his professional capacity, but not in his individual capacity. *See id.* at 2-3. Thus, it was hardly controversial for Judge Pisano to enforce the clause against the president who signed the contract on the company's behalf: "[Mr. DeVileger] is president of Bird Resources, and as such was very substantially involved in providing the services required by the parties' Agreement." *Id.* at *3 (internal citations omitted). Those two defendants, along with the plaintiff, contractually agreed to trial in New Jersey state court. Enforcing the clause merely resulted in a remand of the case from

New Jersey federal court back to New Jersey state court. That is obviously far different from the facts here.[16]

Unlike the parties in *Four River*, the parties here did *not* agree to trial in TCI. Further, moving the case over one thousand miles away to TCI is obviously much different than moving from New Jersey federal court to New Jersey state court. Still further, the New Jersey state courts are obviously much more stable than the unfortunate situation in TCI. Accordingly, the enforcement of the clause in *Four River* is not instructive as to whether Defendants here can enforce a clause they did not bargain for, which would result in the case moving far away to TCI.

### 4.    Defendants Failed to Distinguish *D'Elia*.

Notably absent from Defendants' brief is any reference to a recent decision from this district, *D'Elia v. Grand Caribbean Co., LTD.*, No. 09-1707, 2010  WL 1372027 (D.N.J. Mar. 30, 2010). In that case, a husband and wife sued several defendants, including Grand Caribbean and Interval

---

[16]  The forum selection clause in *Four River* was asserted in the context of a plaintiff's motion to remand the case to state court where the plaintiff and one of the defendants had contractually agreed to litigate in New Jersey state court; however, the other defendant was a non-signatory to that contract. Thus, if the court had not enforced the forum selection clause on the non-signatory, it presumably would have resulted in that defendant staying in federal court and the other defendant going back to state court. *Four River Exploration,* 2010 WL 216369, at *2-3.

Servicing.[17]  *Id.* at *1-2.  Defendant Interval Servicing—a non-signatory—sought to enforce a forum selection clause contained in a contract between plaintiffs and Grand Caribbean.[18]  *Id.* at *2-4.

Judge Hillman explained that "[i]n the Third Circuit, a non-signatory party may enforce a forum selection clause in a contract if that party is a third-party beneficiary of the contract or is closely related to the contractual relationship or dispute such that it is foreseeable that the party will be bound."  *Id.* at *3 (collecting cases).  He then found that Interval Servicing was not an intended third-party beneficiary by virtue of merely performing "certain administrative and business services on behalf of the other defendants."  *Id.* at *4.

Importantly, the court also rejected Interval Servicing's "closely related" argument, which is quite similar to the argument Defendants make here.  Judge Hillman explained:

> In the Third Circuit, those circumstances in which a non-signatory party may enforce the forum selection clause are limited, often reserved to matters of agency or employment or

---

[17] Interval Servicing was an entity that "managed" the resort at which the plaintiffs suffered the injures at issue in the lawsuit, and also "handled the management and operation" of certain duties for the other defendants. *See D'Elia*, 2010 WL 1372027, at *2.

[18] Similar to the forum selection clause in the Purchase Contract here, the clause at issue in *D'Elia* purportedly applied to "any claim arising from any" injury or accident at the resort, and provided that any such case would be brought in Mexico under Mexican law. *See D'Elia*, 2010 WL 1372027, at *1.

> to principles of common law contracts…. Absent any proof that Interval Servicing is an agent, employee, or an entity with a comparable relationship to a signatory-defendant, Interval Servicing cannot enforce the forum selection clause because there is no indication that it belongs to the category of entities that are normally characterized as 'closely related' to a signatory for purposes of the enforcement of a forum selection clause or a similar contractual provision.

*Id.* at *5 (citing *Dayhoff, Inc. v. Heinz Co.,* 86 F.3d 1287, 1296 (3d Cir. 1996)).  Just as in *D'Elia,* Defendants here have also failed to put forth any "proof" to show that they are sufficiently "closely related" to the Purchase Contract.  *See D'Elia,* 2010 WL 1372027, at *5, n.7.  Nor have they put forth any proof that they are in an agency, employment or other comparable relationship with the other signatory to the Purchase Contract (Cherokee). *Id.*  As such, Defendants lack standing to enforce the clause here.

### 5. Unlike in *Sahara Sam's*, Enforcing Clause Here Would Contravene New Jersey Public Policy Due to Extreme Problems in TCI.

As Defendants acknowledge in their brief, a forum selection clause can be held unenforceable where, *inter alia,* its enforcement would violate a strong public policy of the forum, or would result in jurisdiction so seriously inconvenient as to be unreasonable.  *See* Defs.' Mem. at 6 (quoting *Moneygram Payment Sys. v. Consorcio Oriental, S.A.,* 65 F. App'x 844, 846 (3d Cir. 2003)); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13 (1972) (holding that a court may decline to enforce a forum selection

clause if doing so would 'contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision').

A strong public policy of New Jersey is protecting its residents from misrepresentations like those at issue here, as evidenced by the New Jersey Consumer Fraud Act, which the New Jersey legislature intended to be one of the strongest consumer protection laws in the nation. *See Homa v. Am. Express Co.*, 558 F.3d 225 232 (3d Cir. 2009) ("the 'available legislative history of [the NJCFA] demonstrates that the Act was intended to be one of the strongest consumer protection laws in the nation... [and] should be construed liberally in favor of protecting consumers'") (quoting *Huffmaster v. Robinson*, 534 A.2d 435, 437-38 (N.J. Super. Ct. Law Div. 1986)).

The clause that Defendants seek to enforce provides that the Purchase Contract is to be "interpreted and governed in all respects *according to the law of the Turks & Cacios*…" *See* Defs.' Mem. at 5 (emphasis supplied). If applied, Plaintiffs would presumably be precluded from asserting their state law claims, including Count I for violations of the NJCFA. Depriving Plaintiffs of this important remedy—particularly under the circumstances here—would violate this strong public policy of New Jersey.

**6.      Unlike in *Sahara Sam's*, Enforcing Clause Here Would Deprive Plaintiffs of Their Day In Court.**

Enforcing the clause here would require individual plaintiffs from New Jersey, New York and Connecticut to litigate, in TCI, their claims against two U.S. corporations.  Defendants even admit that transferring the case to this foreign venue will "presumably" require Plaintiffs to "obtain new counsel." Defs.' Mem. at 16.  Under the circumstances, requiring these *domestic* plaintiffs to litigate their claims against *domestic* defendants in a foreign forum is "so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983).  *See Weisenberger v. BT Ams., Inc*., No. 09-4828, 2010 WL 1133473, at *5 (D.N.J. Mar. 22, 2010) (refusing to enforce a forum selection clause in a case that was "[a] local dispute between an American Plaintiff and an American Defendant…there has been no showing that any of the relevant evidence in this case is located [abroad]. Rather, the principal dispute concerns Plaintiff's losses that flowed from his change in employment.").[19]

---

[19]  Defendants' conclusory assertion that its witnesses will "likely" be located in "British Columbia or somewhere in Canada, or in TCI" is without any evidentiary support—particularly given that discovery has not even commenced in this case.  *See* Defs.' Mem. at 15.  Also unavailing is Defendants' suggestion that a "site visit" would occur in TCI. The key issues in this case center around the representations that Defendants made, which were delivered to Plaintiffs in their home states of New Jersey, New York, and Connecticut.  *See* FAC ¶ 16.

Neither Plaintiffs nor Defendants here have any current connection with TCI, which makes it extremely uncertain as to whether TCI—a country undergoing extreme political and constitutional turmoil—would even entertain this dispute between parties all domiciled in the United States. Under these circumstances, the clause cannot be enforced.

## II.   DEFENDANTS' *FORUM NON CONVENIENS* ARGUMENT FAILS FOR NUMEROUS REASONS.

It is well settled that the doctrine of *forum non conveniens* "must be sparingly applied, inasmuch as its application results in the dismissal of an action over which the court has jurisdiction and would ordinarily have a duty to resolve." *Am. Cynanamid Co. v. Picaso-Anstalt*, 741 F. Supp. 1150, 115 (D.N.J. 1990). The doctrine permits a district court to dismiss a complaint only "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish...*oppressiveness and vexation to a defendant...out of all proportion to plaintiff's convenience*, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (emphasis added). This is a high burden, and Defendants here bear that burden on all elements in the *forum non conveniens* analysis. *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43-44 (3d Cir. 1988).

Defendants were initially required to establish that an adequate alternative forum exists. *Lacey*, 862 F.2d at 44. Because they made no effort to show that TCI is an adequate alternative forum, there is no need for the Court to address the next step in the analysis, which requires Defendants to prove that the private and public interest factors weigh heavily in favor of dismissal. *See id.; see also Burke v. Quartey*, 969 F. Supp. 921, 929 (D.N.J. 1997) ("defendant bears a heavy burden to satisfy both components of the analysis and must establish a strong preponderance in favor of dismissal").

## A.     Defendants Failed to Offer Any Proof TCI Is Adequate.

The adequacy of the alternative forum is a threshold issue that must be addressed at the outset. *See Piper Aircraft*, 454 U.S. at 255 n.22. Two conditions must be met to satisfy the adequacy requirement: (1) the movant must be amenable to process in the alternative forum; and (2) the subject matter of the lawsuit must be cognizable in the alternative forum in order to provide the plaintiff appropriate redress. *See Technology Development Co., Ltd. v. Onischenko*, 536 F. Supp. 2d 511, 517 (D.N.J. 2007). Defendants bear the burden of establishing that they are amenable to process in TCI and that it is an adequate forum. *See id*.

Defendants did not state that they are amenable to process in TCI. *See D'Elia*, 2010 WL 1372027 at *7 (rejecting *forum non conveniens* argument

because movant failed to explicitly concede that it was subject to jurisdiction in alternative forum).  Further, they did not offer any evidence establishing that TCI "has jurisdiction to hear the case." *Piper*, 454 U.S. at 241.  Neither Plaintiffs nor Defendants are domiciled in TCI and none of them have a current connection to TCI.  Hence, it is not at all clear that TCI has jurisdiction to hear this case or would agree to hear it given that no TCI residents are involved.  Lastly, Defendants did not proffer any authority to illustrate the existence of a satisfactory remedy for Plaintiffs in TCI.  *See D'Elia*, 2010 WL 1372027 at *7 (rejecting *forum non conveniens* argument because movant failed to offer authority illustrating existence of adequate remedy in alternative forum).  Defendants therefore did not meet their burden on the first prong of the adequacy standard.

Moreover, they did not offer *any* evidence to prove that TCI—whose independence as a country and Constitution were suspended in 2009 by the British government due to widespread political corruption—is an adequate forum (*i.e*., offers the plaintiff appropriate redress).  In *Lacey*, the Third Circuit rejected a *forum non conveniens* motion because the movants did not provide any evidence that the alternative forum was adequate.  862 F.2d 38 (3d Cir. 1988).

*Lacey* involved a plane crash in British Columbia and the ensuing lawsuit in the Western District of Pennsylvania. *See id*. at 39-40. The Third Circuit noted that the movants did not file any affidavits to support their *forum non conveniens* motion. *See id*. at 41. The movants argued they were not required to do so because the trial court could determine the issue solely by reference to the complaint and plaintiffs' affidavits. *See id*. at 44. The Third Circuit rejected this argument, holding instead that failing to provide any evidence of British Columbia's adequacy was fatal to movants' *forum non conveniens* motion because the trial court lacked sufficient information to undertake the adequacy analysis. *See id*.

Numerous New Jersey district courts have held similarly. *See, e.g., Burke v. Quartey,* 969 F. Supp. 921, 930 (D.N.J. 1997) (denying motion because movants failed to offer any evidence that alternative forum was adequate); *Nieminen v. Breeze-Eastern*, 736 F. Supp. 580, 583 (D.N.J. 1990) (same); *Technology Dev. Co., Ltd. v. Onischenko*, 536 F. Supp. 2d 511, 519 (D.N.J. 2007) (refusing to dismiss because movant failed to satisfy adequacy requirement by offering only his own sworn affidavit and citations to other cases finding Russia to be an adequate forum, both of which were insufficient evidence).

Applied here, Defendants cannot have the case dismissed on the basis of *forum non conveninens* because they have not offered *any* evidence to show that TCI is an adequate forum. They did not submit an affidavit from an expert on the laws and courts of TCI. Based on the numerous cases cited above, Defendants did not satisfy this threshold issue and, therefore, their motion to dismiss must be denied.

Defendants did not attempt to prove adequacy because they could not possibly do so in the face of the recent political turmoil in TCI. As explained above, the government and the Constitution were suspended in August 2009 for at least two years, including the suspension of the right to trial by jury. Given these fundamental flaws, Defendants cannot possibly establish TCI as an adequate forum. *Piper*, 454 U.S. at 254 (holding that a forum would be inadequate where the remedy in the alternative forum is so clearly inadequate or unsatisfactory that it amounts to no remedy at all).

**B.    Defendants Cannot Overcome Plaintiffs' Choice of Their Home Forum.**

Even if Defendants had established adequacy—which they did not even attempt—they cannot overcome Plaintiffs' choice of their home forum. The Third Circuit has held that the "plaintiff's choice of forum should *rarely be disturbed*, unless the balance of factors is strongly in favor of the defendant." *Lacey*, 862 F.2d at 43 (emphasis added). Furthermore, "the

greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal. . . ."  *Miller v. Boston Scientific Corp.*, 380 F. Supp. 2d 443, 450 (D.N.J. 2005).

Here, eight of Plaintiffs reside in New Jersey and all of them reside in the United States.  Based upon information and belief, none of them and none of the potential class members of this class action reside in TCI.  Because Plaintiffs reside in or near New Jersey, their choice of this forum was clearly motivated by convenience.  Based on the *Miller* case cited just above, it is far more difficult for Defendants to gain dismissal where the forum choice was based on convenience.  *See Miller*, 380 F. Supp. 2d at 450.  Moreover, this case has an obvious and bona fide connection to New Jersey because Plaintiffs reside in or near New Jersey and, accordingly, received there the alleged misrepresentations that form the basis of this suit.  They clearly did not choose New Jersey to vex, harass, or oppress Defendants, who both are headquartered in the United States, not TCI.

### C.    Private and Public Interest Factors Do Not Favor Dismissal.

There is no need for the Court to address the private and public interest factors set forth in *Gulf Oil Corp. v. Gilbert* given that Defendants

failed to satisfy the threshold issue of adequacy.  Nevertheless, Plaintiffs will address those factors for the Court's convenience.  Defendants were required to show that the private and public interest factors *heavily* favor dismissal in order to overcome the deference due to Plaintiffs' choice of New Jersey. *See Lacey*, 862 F.2d at 44 ("moving defendant must show than an adequate alternative forum exists…and, if so, that the private and public interest factors weigh *heavily* on the side of dismissal") (emphasis added). Defendants clearly failed to meet their burden.  Plaintiffs now address each factor in turn.

### 1.    Private Interest Factors Heavily Favor New Jersey.

(1)    *The relative ease of access to sources of proof*:    Eight of the eleven Plaintiffs reside in New Jersey, and the other three Plaintiffs reside in nearby New York and Connecticut.  Hence, the critical mass of witnesses and documents on the plaintiff's side are located in and around New Jersey. Defendants are both headquartered in Denver, Colorado.  New Jersey is far more convenient for them than TCI.  Therefore, New Jersey would afford Plaintiffs and Defendants much easier access to proof.  This factor weighs heavily in favor of New Jersey.

(2)    *Availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses*:    All eleven

Plaintiffs are located in New Jersey or nearby New York and Connecticut. Therefore, the cost of obtaining their attendance in New Jersey will be far cheaper than forcing them to travel to TCI, which will require substantial air fare and very substantial lodging costs. Moreover, Defendants' travel costs will likewise be far cheaper if New Jersey is the forum. This factor weighs heavily in favor of New Jersey.

(3)   *Possibility of view of premises, if view would be appropriate to the action*:  Plaintiffs' case is centered on misrepresentations delivered from Defendants—presumably in Denver—to Plaintiffs residing in New Jersey, New York, and Connecticut. Thus, as Defendants noted, it is not at all clear that a site visit to TCI is required. Therefore, this factor does not figure prominently in the analysis.

(4)   *All other practical problems that make trial of a case easy, expeditious and inexpensive*:  This case will undoubtedly cost less for both sides if it proceeds in New Jersey. Plaintiffs will have little to no travel costs while Defendants will spend far less traveling to New Jersey than to TCI. Defendants acknowledged that a site visit to TCI is not certain. *See* Defs.' Mem. at 15. Therefore, they contradicted their own argument for this factor that there will likely be numerous discovery trips to TCI. *See id.* at 16. This factor weighs heavily in favor of New Jersey.

## 2.    Public Interest Factors Heavily Favor New Jersey.

(1)    *Administrative difficulties flowing from court congestion*: Administrative concerns such as court congestion are not entitled to great weight, particularly in a case where, like here, Plaintiffs chose a forum with a strong interest in the dispute.  *See Doe v. Sun International Hotels, Ltd.*, 20 F. Supp.2d 1328, 1330 (S.D. Fla. 1998).

(2)    *The "local interest in having localized controversies decided at home"*:  This case involves numerous New Jersey residents against two Denver-based defendants.  No party hales from TCI.  Hence, New Jersey has a much stronger interest in this litigation than does TCI.  Further, TCI law does not apply to misrepresentations delivered by U.S.-based representatives to New Jersey residents.  Hence, this factor heavily favors New Jersey.

(3)    *The interest in "having the trial of a diversity case in a forum that is at home with the state law that must govern the case" and the avoidance of unnecessary problems in conflict of laws, on in the application of foreign law*:  This case is based on misrepresentations presumably emanating from Denver and received in New Jersey, New York, and Connecticut.  Thus, it is very unlikely that foreign law (TCI law) will apply to Plaintiffs' misrepresentations claims.  However, even if foreign law did apply, this would be no justification for dismissing this case as federal courts

often apply foreign law.  *See, e.g., Manu Intern., S.A. v. Avon Products, Inc.*, 641 F.2d 62, 68 (2d Cir. 1981) ("we must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must perform often").

(4)   *The unfairness of burdening citizens in an unrelated forum with jury duty*:  Defendants are simply wrong in arguing that this case has no connection to New Jersey.  The case involves eight New Jersey residents who received Defendants' misrepresentations in New Jersey.  New Jersey obviously has a strong interest in ensuring that its residents are protected from misrepresentations as evidenced by the New Jersey's legislature's enactment of the Consumer Fraud Act.  *Homa v. Am. Express Co.*, 558 F.3d 225, 232 (3d Cir. 2009) ("the available legislative history of [the NJCFA] demonstrates that the Act was intended to be one of the strongest consumer protection laws in the nation...[and] should be construed liberally in favor of protecting consumers.").  This factor weighs heavily in favor of New Jersey.

## CONCLUSION

For the foregoing reasons, this case—involving New Jersey residents against two U.S. corporate defendants—should not be dismissed in favor of proceeding over a thousand miles away in TCI, a country in great political

33

and constitutional turmoil that has little to no connection to this case.

Defendants' motion to dismiss should be denied.

<div style="margin-left: 40%;">

Respectfully submitted,

By:   *//s// Joseph G. Sauder*
CHIMICLES & TIKELLIS LLP
Joseph G. Sauder
Benjamin F. Johns
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail: JosephSauder@chimicles.com
BFJ@chimicles.com

Michael A. Caddell
State Bar No. 249469
**CADDELL & CHAPMAN**
1331 Lamar, #1070
Houston TX 77010
Telephone 713.751.0400
Facsimile: 713.751.0906
mac@caddellchapman.com

COUNSEL FOR PLAINTIFFS

OF-COUNSEL
Cynthia B. Chapman
State Bar No. 164471
cbc@caddellchapman.com
Gregory K. Evans
State Bar No. 24002065
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX 77010-3027
(713) 751-0400
(713) 751-0906 FAX

</div>

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph G. Sauder, hereby certify that on this 28th day of January,

2011, I caused the foregoing **PLANTIFFS' MEMORANDUM OF LAW**

**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**, <u>and</u>

<u>Declaration of Benjamin F. Johns (and exhibits thereto)</u> to be filed using the

Court's CM/ECF system, thereby serving it upon all counsel of record in

this case.

Dated:        January 28, 2011


<u>*/s/ Joseph G. Sauder*</u>
Joseph G. Sauder