NOT FOR PUBLICATION                    [Dkt. Ent. 17, 22]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

DAVE DONACHY, et al.,

    Plaintiffs,

  v.

INTRAWEST U.S. HOLDINGS, INC., and PLAYGROUND DESTINATION PROPERTIES, INC.,

    Defendants.

Civil Action No. 10-4038 (RMB/KMW)

**OPINION**

Appearances:

Benjamin F. Johns, Esquire
Joseph G. Sauder, Esquire
Chimicles & Tikellis, LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
    Attorneys for Plaintiffs

Aaron Van Nostrand, Esquire
Cory M. Gray, Esquire
Greenberg Traurig LLP
200 Park Avenue
Florham Park, New Jersey 07932-0677
    Attorneys for Defendants

**BUMB**, UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court upon the motion of Defendants, Intrawest U.S. Holdings, Inc. ("Intrawest") and Playground Destination Properties, Inc. ("Playground") (collectively "Defendants"), to dismiss various claims filed by Plaintiffs Dave and Carol Donachy, Anthony and Susan DiMeglio, Andrew and Charlene Wingfield, Richard and Suzanne

1

Kucharski, Vincent and Donna LaRocca and Ali Imtiaz ("Plaintiffs").  Defendants argue for dismissal based on a contractual forum selection clause or, in the alternative, on the doctrine of <u>forum non conveniens</u>.  Plaintiffs seek leave to file a sur reply.  For the following reasons, Defendants' motion to dismiss and Plaintiffs' request to file a sur reply are both denied.

## I. Background[1]

Plaintiffs,[2] eleven individuals from New Jersey, New York and Connecticut, purchased condominium units in a luxury resort called "Veranda" on the island of Turks and Caicos ("TCI").  <u>See</u> Plaintiffs' First Amended Complaint ("FAC") ¶¶ 21-25.  Defendants'[3] role was to market and sell the units to individuals by directly contacting its clientele via telephone and e-mail. (FAC at ¶ 23.)  Plaintiffs allege, in part, that they purchased units based upon representatons made by Defendants.  Specifically, Plaintiffs allege that Defendants represented the following in their brochure:  "Veranda will require only a 20% down payment and these funds will be held

---

[1] The allegations in the First Amended Complaint are accepted as true and construed in a light most favorable to Plaintiff.  <u>See</u> <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)(internal citations omitted).

[2] Plaintiffs' Amended Complaint also identifies a putative class comprised of eighty individuals "geographically dispersed throughout the country, as well as in Canada and England." (FAC at ¶ 117.)  Defendants argue that class certification is inappropriate, an argument for another day.

[3] The FAC refers to Intrawest and Playground collectively as "Intrawest." (FAC ¶ 18.)  The Court refers to these parties collectively as "Defendants."

in an interest bearing trust account, ensuring you are protected from any unforseen circumstances, right through the construction period." (FAC ¶ 27; see Pl. Ex. A. to Compl.)[4] Further, Defendants' representatives repeatedly assured Plaintiffs over the telephone and by e-mail "that their deposits would be safe in all circumstances." Id.

Each of the Plaintiffs signed a contract with the condominium developer, Cherokee Limited ("Cherokee"), for the purchase of a Veranda unit. This contract, known as an Offer and Purchase Agreement (the "Agreement," or collectively, "Agreements"), contained what Defendants characterize as a mandatory forum selection clause. (See Pl. Ex. B to FAC.) The clause provides:

> This Agreement shall be interpreted and governed in all respects according to law of the Turks & Caicos Islands whose courts shall have exclusive jurisdiction of any matters arising relative to this Agreement.

(Id. at ¶ 15.8.)

Thereafter, numerous problems arose with the construction of the Veranda condominiums, ending in Cherokee's bankruptcy. (FAC at ¶¶ 28-29.) Ultimately, Plaintiffs' deposits were not safe in all circumstances, as allegedly promised by Defendants, and Plaintiffs lost approximately $10 million in total. (Id. at ¶ 30.) Plaintiffs filed suit in this Court seeking to recover their deposits and other related out-of-

---

[4] "When reviewing a complaint, a court should consider not only the allegations contained in the complaint itself but also the exhibits attached to it which the complaint incorporates pursuant to Fed. R. Civ. P. 10(c)." See ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994).

pocket losses. (See Dkt. Ent. 1.)  Defendants now move to dismiss.

### III. Standard

To survive a motion to dismiss,[5] "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Sheridan v. NGK Metals Corp., 609 F.3d 239, 263 n.27 (3d Cir. 2010) (quoting Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 129 S.Ct. at 1949).

The Court conducts a three-part analysis when reviewing a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations

---

[5]   Courts have debated whether a motion to dismiss based on a forum selection clause should be addressed under Rule 12(b)(3) or 12(b)(6).  See D'Elia v. Grand Caribbean Co., No. 09-1707, 2010 WL 1372027, at *2 n.4 (D.N.J. Mar. 30, 2010)(citing Heide v. Seven Springs Farm, Inc., 2009 WL 1346035, at *2 (W.D. Pa. May 13, 2009)(comparing Rule 12(b)(3) and Rule 12(b)(6)); see also Lambert v. Kysar, 983 F.2d 1110, 1112 n.1 (1st Cir. 1993)(finding that motions to dismiss based on forum selection clauses are governed by Rule 12(b)(6) and not Rule 12(b)(3)). As a result of this debate, Rule 12(b)(6) "has been identified as a proper mechanism to enforce a forum selection clause." D'Elia, 2010 WL 1372027, at *2 n.4 (citing Wall St. Aubrey Golf, LLC v. Aubrey, 189 Fed. Appx. 82, 84 n.1 (3d Cir. 2006); Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 298 (3d Cir. 2001); Heide, 2009 WL 1346035, at *2-3; Intermetals Corp. v. Hanover Int'l Aktiengesellschaft Fur Industrieversicherungen, 188 F. Supp. 2d 454, 457 (D.N.J. 2001)).

> that, "because they are no more than conclusions are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009)(" . . . [A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.").

## IV. Discussion

As noted, Defendants raise two arguments for dismissal. The Court addresses each in turn.

### A. Improper Venue

Defendants argue that the forum selection clause in the Agreement between Plaintiffs and Cherokee is enforceable by Defendants, non-signatories, and mandates litigation in Turks & Caicos ("TCI"). See Pl. Ex. B to FAC at ¶ 15.8. "It is widely accepted that 'non-signatory third-parties who are "closely related to [a] contractual relationship"' are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationships." Sahara Sam's Oasis, LLC v. Adams Companies, Inc., No. 10-0881, 2010 WL 3199886, at *6 (D.N.J. Aug. 12, 2010)(quoting Four River Exploration, LLC v. Bird Res., Inc., No. 09-3158, 2010 WL 216369, at *6 (D.N.J. Jan. 15, 2010)). Forum selection clauses may also bind third parties where the third party "should have foreseen governance by the clause." Jordan v. SEI Corp., No. 96-1616, 1996 WL 296540, at *6 (E.D. Pa. June

5

4, 1996)(citing Hugel v. Corporation of Lloyd's, 999 F.2d 206, 209-10 (7th Cir. 1993) (corporations owned and controlled by the contracting party bound by forum selection clause); Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 n.5 (9th Cir. 1988) (parent companies of contracting parties, as well as individual directors, bound); Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202-03 (3d Cir. 1983)(third party beneficiaries bound), overruled on other grounds as recognized in Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1161 n. 22 (3d Cir. 1989)).

   Defendants maintain that, while not signatories to the Agreements, they are so closely related to the contractual relationship between Plaintiffs and Cherokee, that Plaintiffs are required to bring this suit in the forum designated in the Agreement.  In addition to noting that Plaintiffs attached a copy of the Agreement to their Amended Complaint, Defendants cite several allegations in Plaintiffs' Complaint to support their theory:  (1) Defendants "assisted in the development" of the Veranda (see FAC ¶ 21); (2) Defendants' "primary role was to market and sell units to individuals" (see id. at ¶ 23); (3) Defendants "persuaded [Plaintiffs] to purchase a unit in Veranda," which Defendants argue necessitated Plaintiffs' execution of the Agreements (see id. at ¶ 24).  Defendants were also compensated for their services based on commissions for the number of units sold. (See id. at ¶ 33.)  Plaintiffs, who do not dispute the validity of the forum selection clause

contained in the Agreements, respond, inter alia, that neither Intrawest nor Playground has standing to enforce the forum selection clause.

In Sahara Sam's, supra, this Court found that the relationship of a contract non-signatory was sufficiently close to permit enforcement of a forum selection clause. 2010 WL 3199886, at *6. However, the facts "underlying the relevant contractual relationship" in that case are distinguishable from those present here. In Sahara Sam's, the plaintiffs brought suit "alleg[ing] problems with a heating, ventilating, and air conditioning (HVAC) unit installed by" defendants Aaon Inc. ("Aaon"), Adams Companies, Inc. ("Adams") and Teeter Engineering Group, P.A. ("Teeter"). Id. at *1. Adams and Aaon sought dismissal of the plaintiffs' claims, and Teeter's cross claim for indemnity, based on a forum selection clause. Id. Although Adams was a non-signatory to the underlying contract, the Court found the selection clause enforceable by Adams because the corporation essentially acted as the sales representative and conducted business for signatory Aaon and because "the forum selection clause [wa]s found in the contract underlying the relationships among the parties, including Adams." Id. at *6. Indeed, Adams drafted the written proposal for the design and installation for the HVAC unit, which the plaintiffs and defendant Aaon signed and executed as a contract. Id. at *1. Defendant Aaon attached a document listing its standard terms of sale to the contract, which included a forum selection clause. Id. Thus, although

7

Adams had not signed the contract, it essentially drafted the language said to have been breached by the plaintiffs.

The Court also found the clause enforceable by another non-signatory because that entity's work "was sufficiently related to the contract to warrant an imposition of the forum selection clause." Id. at *6 n.3. The contract at issue indicated that Teeter would "review and modify all drawings prepared by Adams under the contract." Id.  Teeter being identified in the contract by name made it abundantly clear that Teeter had a "contractual" relationship with the plaintiffs.

By contrast, the non-signatory Defendants here are not mentioned in the Agreement between Plaintiffs and Cherokee. The Defendants were not assigned obligations under the Agreement, and the performance of the Agreement was not dependent on Defendants' services.  Nor have Defendants provided any evidence to suggest that they served either as an agent or third-party beneficiary of Cherokee.  Defendants may have been instrumental in soliciting Plaintiffs to enter into agreements with Cherokee, but Defendants' relationship to Plaintiffs is simply not sufficiently related to the Agreement at issue here.  Indeed, the contract makes clear that representations regarding the marketing of the Veranda were not incorporated into the Agreement:

> The Purchaser hereby acknowledges that neither the Seller nor any agent of the Seller has made any representation which has influenced or induced the Purchaser to enter into this Agreement and that this Agreement is not being entered into in reliance on any information or forecasts of any nature whatsoever,

8

>  including for the avoidance of doubt any promotional
>  material provided to the Purchaser.

(See Pl. Ex. B to FAC at ¶ 11.3.)

Simply put, the Court finds that the non-signatory Defendants have failed to demonstrate that they are so closely related to the contractual relationship between Plaintiffs and Cherokee that they may invoke the forum selection clause identified here.  The Defendants' motion to dismiss on this basis is denied.[6]

### B. Forum Non Conveniens

"Determinations of forum non conveniens, unlike issues of jurisdiction, are not solely questions of law." Lony v. E.I. Du Pont de Nemours & Co., 886 F.2d 628, 632 (3d Cir. 1989)(citing Pain v. United Technologies Corp., 637 F.2d 775, 781 (D.C. Cir. 1980)).  "Rather they represent exercises of structured discretion by trial judges appraising the practical inconveniences posed to the litigants and to the court should a particular action be litigated in one forum rather than another."  Id. (quoting Pain, 637 F.2d at 781)(internal quotation marks omitted)).  "[T]he district court is accorded substantial flexibility in evaluating a forum non conveniens motion, and 'each case turns on its facts.'"  Van Cauwenberghe v. Biard, 486 U.S. 517, 529 (1988)(internal citations ommitted) (quoting Williams v. Green Bay & Western R. Co., 326 U.S. 549, 557 (1946)).

---

[6] Because the Court finds that Defendants cannot enforce the Agreements as non-signatories, the Court does not address Plaintiffs' other arguments.

The doctrine of forum non conveniens vests a District Court with the discretion to dismiss an action when an alternative forum is available to hear the plaintiff's case, and the plaintiff's chosen forum is oppressive and vexatious to the defendant. See Am. Dredging Co. v. Miller, 510 U.S. 443, 447-48 (1994). "At the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum." Piper Aircraft Co. V. Reyno, 454 U.S. 235, 255 n. 22 (1981); see also Windt v. Qwest Comm. Int'l, Inc., 529 F.3d 183, 189-90 (3d Cir. 2008). "[I]f the subject matter of the litigation is not cognizable in the alternative forum, or the remedy is otherwise clearly unsatisfactory, that forum will be considered inadequate for purposes of forum non conveniens." Carl Schroeter GmbH & KO., KG. v. Crawford & Co., No. 09-946, 2009 WL 1408100, at *6 (E.D. Pa. May 19, 2009)(citing Lacey v. Cessna Aircraft Co., 932 F.2d 170, 180 (3d Cir. 1991) (Lacey II)). To satisfy the adequacy requirement, a defendant must establish that (1) he or she is amenable to process in the foreign forum and (2) the foreign forum will provide the plaintiff with appropriate redress. Burke v. Quartey, 969 F. Supp. 921, 930 (D.N.J. 1997)(citing Derensis v. Coopers & Lybrand Chartered Accountants, 930 F. Supp. 1003, 1006-07 (D.N.J. 1996); Lacey II, 932 F.2d at 180).

Where an adequate alternative forum exists, a district court "must then determine the appropriate amount of deference to be given the plaintiff's choice of forum." Windt, 529 F.3d

10

at 190. In general, "a plaintiff's choice of forum should rarely be disturbed." Windt, 529 F.3d at 189 (quoting Piper Aircraft Co., 454 U.S. at 241)(internal quotation marks omitted)). However, where the "plaintiff's chosen forum would 'establish. . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,'" the court may exercise its discretion to dismiss the action. Id. (quoting Koster v. (Am.) Lumbermens Mut. Casualty Co., 330 U.S. 518 (1947)). To assist trial courts in their analysis, the Supreme Court directed courts to balance private and public interest factors. Id. Factors relating to the private interests include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Id. (quoting Gulf Oil v. Gilbert, 330 U.S. 501, 508 (1947)). Public interest factors include administrative difficulties arising from court congestion; imposing jury duty on the people of a community which has no relation to the litigation; the "local interest in having localized controversies decided at home"; "having the trial of a diversity case in a forum that is at home with the state law that must govern the case"; avoiding problems with conflict of law, and the application of foreign law. Id. (quoting Gulf Oil, 330 U.S. at 508-09).

The defendant bears the burden of persuasion for all elements of the forum non conveniens analysis. Lacey v.

11

Cessna Aircraft Co., 862 F.2d 38, 43-44 (3d Cir. 1988)(Lacey I).  "The Third Circuit has made clear that dismissal for forum non conveniens is the exception rather than the rule."  Carl Schroeter GmbH & KO., KG., 2009 WL 1408100, at *6 (quoting In re Corel Corp. Inc. Sec. Litig., 147 F. Supp. 2d 363, 365 (E.D. Pa. 2001)(internal quotations and additional citations omitted)).  To prevail on a motion to dismiss under the doctrine of forum non conveniens, a defendant must establish that "private and public interest factors weigh heavily on the side of dismissal," Lacey I, 862 F.2d at 44, and "provide enough information to enable the district court to balance the parties' interests."  Id. (quoting Piper, 454 U.S. at 258)(internal quotation marks omitted)).

### 1.   **An Adequate Alternative Forum**

Plaintiffs contend that Defendants' motion should be denied because Defendants failed to address the existence of an alternative forum as a threshold matter in the forum non conveniens analysis.  A court's "inquiry into the adequacy of the alternative forum is limited."  D'Elia, 2010 WL 1372027, at *7.  Defendants agreed in their reply brief that they would not challenge service of process or the jurisdiction of courts in TCI to hear this matter.  (Def. Reply Br. at 13.)  Nonetheless, as set forth below, the Court finds dismissal based on forum non conveniens would still be inappropriate given Defendants' failure to persuade the Court that public and private interest factors weigh heavily in favor of dismissal.

12

### 2. Plaintiffs' Choice of Forum

Of the eleven named Plaintiffs in this case, eight reside in New Jersey, and the other three reside in New York and Connecticut. See FAC at ¶¶ 1-11. Intrawest is a Delaware corporation headquartered in Denver, Colorado. See id. at ¶ 13. Playground is a Washington corporation also headquartered in Denver. See id. at ¶ 14. None of the parties reside in TCI.

The filing of this complaint occurred in the home forum of the vast majority of the named Plaintiffs. "Ordinarily, great deference is accorded a plaintiff's choice of forum. . . ." Lony, 886 F.2d at 633. Furthermore, while Defendants' argue that the transactions underlying the litigation occured in TCI, they have not provided sufficient information to permit a meaningful analysis of this issue. The facts merely indicate that Defendants marketed and sold units to the named Plaintiffs. There is no indication as to where Plaintiffs and Defendants were located at the time these interactions took place.

### 3. Private Interest Factors

#### a. Access to Sources of Proof

Defendants contend that much of the evidence relevant to Plaintiffs' claims is located in Denver, British Columbia and TCI. Plaintiffs respond that the critical mass of witnesses and documents for Plaintiffs are located in New Jersey, New York and Connecticut. While it may be inconvenient for Defendants to bring evidence and witnesses to New Jersey,

13

Defendants have not persuaded the Court that to do so would be so oppressive and vexing as to tip the balance in favor of dismissal.

### b.   Obtaining Attendance of Witnesses

As Defendants acknowledge, whether Defendants' witnesses travel to New Jersey or TCI, the distance will be significant. Defendants maintain, however, that the cost of litigation and trial in TCI would likely be less expensive than in New Jersey.  Although a showing of the difference in cost of litigation and trial would lend credence to Defendants' contention that TCI presents a more convenient forum, Defendants provide no information to support their assertions regarding relative expense.  Again, Defendants fail to persuade the Court that New Jersey presents an "oppressive and vexing" forum.

### c.   Possibility of a View of the Premises

While the need for a site visit to Veranda might appear to support proceeding in TCI, it is not clear that a visit is critical to the claims at issue here, which involve Defendants' representations regarding the security of Plaintiffs' deposits, not for example, construction of the condominiums.  This factor does not weigh in favor of dismissal.

### d.   Other Practical Problems

Defendants assert that the cost of litigation and trial would "likely be significantly less" should the case be held in TCI, given that Defendants would "likely" make several

14

trips to TCI for discovery and "presumably" obtain other counsel. (Def. Br. at 15-16.) Again, Defendants have simply not established that the cost of litigating in New Jersey will be significantly more than the cost of litigating in TCI, particularly where all parties reside in the United States.

### 4. Public Interest Factors

#### a. Court Congestion

The parties concede that the District Court for the District of New Jersey has a heavier case load than courts in TCI. Thus, this factor would seem to weigh in favor of dismissal. However, considerations of court congestion are not usually afforded significant weight in the balancing analysis. See, e.g., Cornish v. Morris Communications Co., LLC, No. 08-6395, 2009 WL 3129387, at *4 (D.N.J. Sept. 28, 2009).

#### b. Deciding Localized Controversies at Home

Defendants also contend that New Jersey lacks a local interest in the case, stating that the relevant transactions took place in TCI and that, to the extent named Plaintiffs represent members of a class, many members are not from New Jersey. The Court finds these arguments unpersuasive. Nor is the Court persuaded by Defendants' argument that the transactions underlying the litigation involve bank accounts in TCI. Rather, the relevant facts here center on the representations made by Defendants to Plaintiffs, a significant number of whom are residents of New Jersey. Defendants have not persuaded the Court that New Jersey lacks

15

any local interest in this controversy.  Thus, the local interest factor does not favor dismissal.

### c. Application of Foreign Law

Defendants argue that the application of TCI law to Plaintiffs' claims weighs in favor of dismissal.  Where diversity provides the basis for this Court's jurisdiction, New Jersey choice of law principles apply.  See Valenti ex rel Valenti v. Marriott Intern., Inc., 2011 WL 869189, at *7 (D.N.J. Mar. 10, 2011).  Thus, in New Jersey, "the law of the [jurisdiction] that has the most significant connections with the parties and the action applies."  Id. (quoting Tischio v. Bontex, Inc., 16 F.Supp.2d 511, 527 (D.N.J. 1998)).  Defendants, at least at this early juncture, have not established that TCI law applies here.  Cf. Steward Int'l Enhanced Index Fund v. Carr, No. 09-5006, 2010 WL 336276, at *10 (D.N.J. Jan. 22, 2010) ("The necessity of applying foreign law is undisputed, and it weighs against maintaining jurisdiction in this forum.").  But even assuming TCI law does apply, this factor, when considered with the other private and public interest factors, does not mandate dismissal.  See Technology Development Co., Ltd. v. Onischenko, 536 F.Supp.2d 511, 522 (D.N.J. 2007) (quoting Burke v. Quarty, 969 F.Supp. 921, 931 (D.N.J. 1997)) ("The Court finds it unnecessary to determine whether Russian law would apply to TTDC's causes of action, because even if Russian law applied, that factor 'is not compelling enough to nullify the plaintiff's choice of a legitimate forum.'").

### d. Burdening Citizens in an Unrelated Forum

Defendants maintain that because this case lacks significnt connection with New Jersey, its citizens will be unfairly burdened with jury duty. But as already noted, Plaintiffs include eight New Jersey residents. Consequently, this factor does not weigh in favor of dismissal.

"The law is clear: 'unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.'" <u>Marek v. Schneider Nat'l Inc.</u>, No. 08-2193, 2008 WL 3887613, at *3 (D.N.J. Aug. 18, 2008) (quoting <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir. 1970)).

Given Defendants' failure to establish the adequacy of the alternative forum, and to persuade the Court that Plaintiffs' choice of forum is oppressive or vexatious, the Court finds that the <u>forum non conveniens</u> analysis does not favor dismissal.

### V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss on the basis of the forum selection clause or, in the alternative, on the basis of <u>forum non conveniens</u> is **DENIED**. Plaintiffs' motion to file a sur-reply is also **DENIED**.

                                       s/Renée Marie Bumb
                                       RENÉE MARIE BUMB
                                       United States District Judge

Dated: July 21, 2011