NOT FOR PUBLICATION                          [Dkt. No. 29]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

DAVE DONACHY, et al.,

          Plaintiffs,

     v.

INTRAWEST U.S. HOLDINGS,
INC., and PLAYGROUND
DESTINATION PROPERTIES, INC.,

         Defendants.

Civil Action No.
10-4038 (RMB/KMW)


**OPINION**

Appearances:

Benjamin F. Johns, Esquire
Joseph G. Sauder, Esquire
Chimicles & Tikellis, LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
     Attorneys for Plaintiffs

Aaron Van Nostrand, Esquire
Cory M. Gray, Esquire
Greenberg Traurig LLP
200 Park Avenue
Florham Park, New Jersey 07932-0677
     Attorneys for Defendants

**BUMB,** UNITED STATES DISTRICT JUDGE:

1

Plaintiffs Dave Donachy, Carol Donachy, Anthony DiMeglio, Susan DiMeglio, Andrew Wingfield, Charlene Wingfield, Richard Kucharski, Suzanne Kucharski, Vincent LaRocca, Donna LaRocca, and Ali Imtiaz ("Plaintiffs") bring this suit in their own names, and on behalf of a class of similarly situated individuals, against Defendants Intrawest U.S. Holdings, Inc. ("Intrawest") and Playground Destination Properties, Inc. ("Playground") (collectively the "Defendants").[1]  Defendants have moved for judgment on the pleadings and to strike Plaintiffs' class action allegations.  For the reasons that follow, Defendants' motion for judgment on the pleadings is GRANTED.  Because this Court dismisses Plaintiffs' individual claims, and class allegations are not viable unmoored to any viable individually named Plaintiffs, Plaintiffs' class claims are also dismissed.

I. Background

Plaintiffs are eleven individuals from New Jersey, New York, and Connecticut, who purchased condominium units in a luxury resort called "Veranda" on the island of Turks and Caicos.[2]  See FAC ¶¶ 21-25.  Defendants marketed and sold the

---

[1]    Plaintiffs' First Amended Complaint ("FAC") refers to Intrawest and Playground collectively as "Intrawest." (FAC ¶ 18.)  The Court refers to these parties collectively as "Defendants."

[2]    The allegations contained in the Amended Complaint are accepted as true for purposes of the motion for judgment on the pleadings.

units to individuals and were compensated on a commission basis. (FAC at ¶¶ 23, 33.)

In connection with their purchases, Plaintiffs were required to pay a deposit equal to 20% of the ultimate purchase price. (FAC at ¶ 25.) According to Plaintiffs, prior to making the deposits, Defendants represented that the deposit would be safe from any "unforeseen circumstances." (FAC at ¶ 26.) Specifically, Plaintiffs allege that Defendants utilized a marketing brochure, which represented that: "Veranda will require only a 20% down payment and these funds will be held in an interest-bearing trust account, ensuring you are protected from any unforeseen circumstances, right through the construction period." (FAC ¶ 27; see Pl. Ex. A to Compl.)[3] Defendants' representatives also are alleged to have repeatedly assured Plaintiffs over the telephone and by e-mail "that their deposits would be safe in all circumstances." Id. Plaintiffs' agreements with Cherokee Ltd. ("Cherokee"), the seller of the condominium units, however, contain an acknowledgment that no representations made by Cherokee or its agents influenced or induced Plaintiffs to enter into the purchase agreements and

---

[3]     The brochure was attached as an exhibit to Plaintiffs' First Amended Complaint.  This Court may consider materials attached to a complaint, like the brochure, on a motion to dismiss.  See ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994)("When reviewing a complaint, a court should consider not only the allegations contained in the complaint itself but also the exhibits attached to it which the complaint incorporates pursuant to Fed. R. Civ. P. 10(c).").

disclaim reliance on "any information or forecasts of any nature whatsoever" including in promotion material provided to Plaintiffs. (Pl. Ex. B to Compl. at 11.3.)[4]

Notwithstanding this disclaimer, Plaintiffs claim that they relied on the representation that their deposits would be safe and made deposits for purchase of the condominiums to Cherokee. (See, e.g., FAC ¶ 41.) Plaintiffs' agreements with Cherokee provided that the deposit could be utilized in funding costs related to the condominium development, but would otherwise be held by Cherokee's attorneys in an interest bearing account. (See e.g. FAC Ex. B.) The agreement provides for the deposit to be refunded in the event Cherokee failed to complete its obligations under the agreement, but does not otherwise provide for a refund of the deposit. (See e.g. FAC Ex. B.) Some Plaintiffs paid their deposits in installments. (FAC ¶ 41, 53.) It is unclear from the FAC whether Defendants continued to repeat the alleged misrepresentations to the Plaintiffs who paid in installments, between the installments. However, it is clear that, after making the deposits, all of the Plaintiffs allege that they were again reassured that their deposits would be safe. (See e.g. FAC ¶¶ 42, 43, 55.) But, despite the assurances made by Defendants, Cherokee exhausted

---

[4]     The Plaintiffs attached a copy of the named Plaintiffs' agreements with Cherokee. Because the agreements between Plaintiffs and Cherokee were attached to the First Amended Complaint, this Court may consider

the deposits and filed for bankruptcy, without completing the condominium project. (FAC ¶ 28, 29.) The named Plaintiffs now seek the recovery of their individual deposits, which range in size from $70,180 to $135,180.

## II. Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sheridan v. NGK Metals Corp., 609 F.3d 239, 262-63, n.27 (3d Cir. 2010) (quoting Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 129 S.Ct. at 1949).

The Court conducts a three-part analysis when reviewing a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

---

them on a motion to dismiss. See ALA, Inc., 29 F.3d at 859.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010);
see also Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir.
2009)(" . . . [A] complaint must do more than allege the
plaintiff's entitlement to relief. A complaint has to 'show'
such an entitlement with its facts.").

Claims premised on fraud must, under Federal Rule of Civil
Procedure 9(b) ("Rule 9(b)"), do more. Plaintiffs claiming
fraud or mistake must allege, at a minimum, the "who, what,
when, where and how" of the events at issue, "or otherwise
inject precision or some measure of substantiation into a fraud
allegation." In re Suprema Specialties, Inc. Sec. Litig., 438
F.3d 256, 276, (3d Cir. 2006); Frederico v. Home Depot, 507
F.3d 188, 200 (3d Cir. 2007). Where allegations of fraud are
brought against multiple defendants, the complaint must "plead
with particularity . . . the [specific] allegations of fraud"
applicable to each defendant. MDNet, Inc. v. Pharmacia Corp.,
147 F. App'x 239, 245 (3d Cir. 2005).

III. Discussion

Plaintiffs, on behalf of themselves and a purported class
of similarly situated individuals, allege five causes of action
against Defendants: (1) violation of the New Jersey Consumer
Fraud Act ("NJCFA"); (2) violation of Connecticut's Unfair
Trade Practices Act ("CUTPA"); (3) violation of Section 349 of
the New York General Business Law ("NY Section 349"); (4)

negligent misrepresentation; and (5) unjust enrichment.  These claims all arise out of Defendants' alleged misrepresentations regarding the safety of Plaintiffs' deposits and Plaintiffs' loss of the deposit moneys. The Court addresses each claim in turn before turning to the viability of Plaintiffs' class allegations.

A.   Plaintiffs' NJCFA Claim

Plaintiffs claim that Defendants made both material misrepresentations and omissions concerning the safety of Plaintiffs' deposits, causing Plaintiffs to suffer the loss of their deposits.  Those allegations can be divided into three categories: (1) allegations based on the brochure's representation that the deposit would be safe from all unforeseen circumstances; (2) allegations of generalized statements by Defendants that that Plaintiffs' deposits would be "safe in all circumstances"; and (3) a generalized allegation that Defendants failed to disclose material information concerning the deposits.  Defendants have moved for dismissal of Plaintiffs' NJCFA claim based on Plaintiffs' alleged failure to plead with particularity pursuant to Rule 9(b) and failure to allege causation.

Claims under the NJCFA are subject to the heightened pleading requirements of Rule 9(b).  FDIC v. Bathgate, 27 F.3d 850, 876 (3d Cir. 1994)(applying Rule 9(b) to NJCFA claim).

More generally, in order to state a claim under the NJCFA, a
plaintiff must demonstrate three elements: (1) unlawful conduct
by the defendant; (2) an ascertainable loss by the plaintiff;
and (3) a causal relationship between the unlawful conduct and
the loss.  The first element may be satisfied through either:
"an affirmative misrepresentation, even if not made with
knowledge of its falsity or with an intent to deceive; the
knowing omission or concealment of a material fact, accompanied
by an intent that others rely upon the omission or concealment;
or a violation of a specific regulation promulgated under the
NJCFA."  Billings v. Am. Exp. Co., No. 10-3487, 2011 WL
5599648, at *9 (D.N.J. Nov. 16, 2011).

     A pervasive defect of the FAC is that Plaintiffs lump the
two Defendants together referring to them collectively as
"Intrawest."  (FAC at ¶ 18.)  Under Rule 9(b), however,
Plaintiffs are required to detail the allegations of fraud
against each defendant individually.  MDNet, 147 F. App'x at
245.  Plaintiffs' failure to do so here is fatal to the FAC.
Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young, No. 91
Civ. 2923, 1994 WL 88129, at *7 (S.D.N.Y. Mar. 15,
2004)("Sweeping references to the collective fraudulent actions
of multiple defendants will not satisfy the particularity
requirements of Rule 9(b)."); Esposito v. I-Flow Corp., No. 10-
cv-3883, 2011 WL 5041374, at *4 (holding that a "complaint that

8

lumps together numerous defendants does not provide sufficient notice of which defendants allegedly made the misrepresentations.")(quotations and citation omitted).

Even assuming this defect were corrected, Plaintiffs' Complaint still contains deficiencies that would warrant dismissal of all but Plaintiffs' first NJCFA claim.  Only Plaintiffs' allegations based on the brochure would survive 9(b) scrutiny.  While Plaintiffs have not provided the exact timing of when the brochure was provided to each plaintiff, they have otherwise injected enough precision into their claims to satisfy Rule 9(b).  Plaintiffs have: indicated the specific portion of a specific document they claim constitutes a misrepresentation[5]; alleged that they received the brochure prior to making their deposits; and alleged that the brochure was provided to them by Defendants. However, Plaintiffs second

---

[5]    Defendants did not present argument on, and, therefore, this Opinion does not resolve, the question of whether the brochure's representation regarding the deposit was, in fact, a misrepresentation.  The brochure represented that "Veranda will require only a 20% down payment and these funds will be held in an interest bearing trust account, ensuring you are protected from any unforeseen circumstances, right through the construction period." According to the Plaintiffs' purchase agreements, the deposits were to be held in a trust account by Cherokee's attorneys, but could be utilized to meet expenses related to the construction of the condominiums.  Plaintiffs have not alleged that the deposits were not held in the manner promised or utilized for any improper purpose, only that the deposits were not as safe as allegedly represented.  The nature of that representation is key.  Defendants only represented in the brochure that the deposits would be safe from unforeseen circumstances, not all circumstances.  Based on the sales agreements, and the risk inherent in any construction project, the possibility that the deposits could be exhausted but the project uncompleted appears to be a foreseeable and known risk.

and third claims would fail.  Plaintiffs have failed to provide
the who[6], what, when, where, and how, or otherwise provide
factual detail, regarding Plaintiffs' second claim - the
allegedly repeated misrepresentation that the deposits would be
"safe in all circumstances." These allegations simply do not
provide sufficient notice under Rule 9(b).  With respect to the
third claim, the alleged omissions, Plaintiffs were required,
and failed, to allege what material facts Defendants knew and
failed to disclose concerning the risks associated with the
deposits.  In re Magnesium Oxide Antitrust Litig., No. 10-5943,
2011 WL 5008090, at *26 (D.N.J. Oct. 20, 2011)(holding that a
plaintiff, under Rule 9(b), must plead a specific omission of a
material fact and the defendant's knowledge of it); Hughes v.
Panasonic Consumer Elecs. Co., No. 10-846, 2011 WL 2976839, at
*12-14 (D.N.J. July 21, 2011)(finding that the complaint had
failed to allege the defendants' awareness of, and failure to

---

[6]      In contrast to the brochure, which, for notice purposes, it is
sufficient that Plaintiffs allege that it was distributed by a
specific Defendant, for this claim, Plaintiffs must offer some
identifying detail as to what specific individuals made these
misrepresentations.  This is because, while Rule 9(b) generally
requires that the plaintiff identify the specific individual who made
the misrepresentation at issue, claims of misrepresentation based on a
standardized document, like the one alleged here, do not require the
same level of precision to put the defendant on sufficient notice
under Rule 9(b).  See Gilmore v. Southwestern Bell Mobile Sys.,
L.L.C., 210 F.R.D. 212, 224 (N.D.Ill. 2001)(holding that, while
generally "the identity of the person who made the misrepresentation"
must be alleged, that Plaintiff need not do so in the context of a
"mass mailing"); 3525 N. Reta, Inc. v. FDIC, No. 10 C 3087, 2011 WL
62128, at *3 (N.D.Ill. Jan. 6, 2011)("When the alleged
misrepresentations are contained in standardized documents of a single
corporate defendant, Rule 9(b) does not require that the actual author
of the documents be specifically identified.").

disclose, a material fact where it only conclusorily asserted such). They have instead only offered the conclusory assertion that Defendants knew and failed to disclose material facts concerning the safety of the deposits. (FAC ¶ 127.) Therefore, even assuming Plaintiffs had properly delineated their allegations as against the two defendants, only Plaintiffs' allegations based on the brochure would be sufficient to satisfy Rule 9(b).

All three categories of allegations also fail to properly allege causation as required. While claims under the NJCFA do not require a demonstration of reliance by the plaintiff, the causal nexus element still requires that a plaintiff allege that, but for the alleged misrepresentation, it would not have suffered the loss at issue. Maniscalco v. Brother Int'l Corp., 627 F. Supp. 2d 494, 503-04 (D.N.J. 2009)(holding that, for purposes of satisfying the causal nexus requirement, "it is sufficient if a plaintiff avers that 'had the alleged [d]efect been disclosed, consumers would not have purchased [defendant's product].'")(citation omitted); Zebersky v. Bed Bath & Beyond, Inc., No. 06-CV-1735, 2006 WL 3454993, at *3 (D.N.J. Nov. 29, 2006)(holding that misrepresentation must have induced purchase to meet causal nexus requirement); Acrand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 304 (D.N.J. 2009)(finding that an allegation that the plaintiffs would not have made the

purchases at issue but for the alleged misrepresentations at issue to be sufficient to satisfy the NJCFA's causation requirement); In re Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litig., 701 F. Supp. 2d 356, 380 (E.D.N.Y. 2010)("Courts have found it sufficient where plaintiffs claim that but for defendant's misrepresentations they never would have purchased defendant's products. CFA plaintiffs have fallen short, however, where they alleged a price inflation theory, which New Jersey courts have found insufficient to show the requisite ascertainable loss or causation.")(interpreting NJCFA). Plaintiffs have not alleged that, had the truth regarding these alleged misrepresentations and omissions been disclosed, they would not have agreed to purchase the condominiums, or, in the case of deposits made in installments, continued making deposit payments. Neither have they alleged that, had the truth been disclosed following their deposits, when Plaintiffs claim that these misrepresentations were instead repeated, that they would have sought, and been able to obtain, a refund of their deposits. See Wiatt v. Wingston & Strawn, LLP, No. 10-6608, 2011 WL 2559567, at *7-8 (D.N.J. June 27, 2011)(finding that plaintiffs had failed to adequately plead causation in negligent misrepresentation claim where alleged misrepresentations occurred after transfers that were basis for loss claim were made and plaintiffs had not

sufficiently pled that they would have "demanded" and
"recovered" the funds at issue if truth had been disclosed).
Therefore, Plaintiffs' NJCFA claim must be dismissed for this
additional reason.

    B.  <u>Plaintiffs' CUTPA Claim</u>

    CUTPA claims are similarly subject to heightened pleading
under Rule 9(b) when they are based on fraud and similarly
require that plaintiffs demonstrate that the alleged unfair
practice caused the plaintiffs' injury.  <u>Empower Health LLC v.
Providence Health Solutions LLC</u>, No. 3:10-CV-1163, 2011 WL
2194071, at *5-6 (D.Conn. June 3, 2011)(holding that Rule 9(b)
applies to CUTPA claims premised on fraud); <u>Haesche v. Kissner</u>,
640 A.2d 89, 94 (Conn. 1994)(holding that a plaintiff in a
CUTPA failure to warn case could not demonstrate causation
because he could not show that he would not have purchased the
product at issue if the defect had been properly disclosed).

    Plaintiffs' CUTPA claims are based on the same conduct as
their NJCFA claims.  Defendants argue, and Plaintiffs do not
dispute, that Plaintiffs' CUTPA claim, as pled, is subject to
Rule 9(b).  Therefore, this Court will apply Rule 9(b) to
Plaintiffs' CUTPA claim.  Defendants contend that Plaintiffs'
CUTPA claim has the same Rule 9(b) and causation infirmities as
Plaintiffs' NJCFA claim.  Because both claims are based on the
same allegations and subject to the same Rule 9(b) and

causation pleading requirements, this Court agrees.
Plaintiffs' CUTPA claims are therefore dismissed.

    C.   <u>Plaintiffs' NY Section 349 Claim</u>

    Plaintiffs' NY Section 349 claim is premised on the same
alleged misrepresentations described above.  Defendants concede
that this claim is not subject to the heightened pleading
requirements of Rule 9(b).  They are correct.  <u>Pelman ex rel.
Pelman v. McDonald's Corp.</u>, 396 F.3d 508, 511 (2d Cir. 2005).
Plaintiffs claiming a violation of NY Section 349 must allege
that the "defendant is engaging in an act or practice that is
deceptive or misleading in a material way and that plaintiff
has been injured by reason thereof." <u>Goshen v. Mut. Life Ins.
Co. of New York</u>, 774 N.E.2d 1190, 1195 (N.Y. 2002).  Applying
this rule, courts have required that plaintiffs demonstrate
that the allegedly deceptive conduct is the "but for" cause of
the alleged injury.  <u>City of New York v. Smokes-Spirits.com,
Inc.</u>, 911 N.E.2d 834, 839 (N.Y. 2009).  While affording
plaintiffs a broad ability to "address commercial misconduct",
the territorial reach of section 349 is limited: "the deception
of a consumer must occur in New York." <u>Goshen</u>, 774 N.E.2d at
1195.  Notably, the statute's reach "does <u>not</u> turn on the
residency of the parties" – only the locus of the transaction.
<u>Id.</u> at 1196 (emphasis added).

Defendants argue, and this Court agrees, that Plaintiffs' claim is deficient in two respects. First, for the reasons described above, Plaintiffs were required, but failed, to establish that the alleged misrepresentations were the "but for" cause of their injuries. Second, though Plaintiffs include New York residents, Plaintiffs have not alleged that any of the named Plaintiffs were deceived in New York, as required. Therefore, Plaintiffs' section 349 claim must be dismissed.

D.   Plaintiffs' Negligent Misrepresentation Claim

Plaintiffs' negligent representation claim is based on two allegations. First, Plaintiffs claim that Defendants made misrepresentations regarding the safety of the deposits because they should have known that the deposits at issue would not be safe in the event Cherokee went bankrupt. Second, the FAC also vaguely alludes to representations made by Defendants regarding the financial health of Cherokee. (FAC ¶ 154, "Intrawest's representations regarding the financial health of Cherokee (the construction company) were incorrect statements."). Plaintiffs claim that these statements were incorrect, that Defendants were negligent in making them, and that Plaintiffs justifiably relied on them to their detriment. (FAC ¶ 154-56.) The parties dispute whether a claim of negligent misrepresentation must be pled under Rule 9(b). However, because Plaintiffs' negligent

15

misrepresentation claim is specifically alleged as a separate claim, it is not subject to Rule 9(b)'s heightened pleading requirements, notwithstanding the significant overlap in allegations between the claims.  In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d at 272-74 (holding that Rule 9(b) does not apply to negligence based misrepresentation claims); Kirtley v. Wadekar, No. 05-5383, 2006 WL 2482939, at *2 (D.N.J. Aug. 25, 2006)(holding that, where negligent misrepresentation is alleged as its own cause of action, it is not subject to Rule 9(b)).[7]

---

[7]    In In re Suprema Specialties, Inc. Sec. Litig., the Third Circuit found that Rule 9(b) did not apply to claims predicated on negligent misrepresentations.  That decision was premised on the Circuit's finding that such claims did not "sound in fraud" because "the reputational concerns that animate" the Rule "are not implicated when a defendant stands accused of nothing more than negligence."  438 F.2d at 274.

This Court observes that the decision did not examine the reputational consequences of allegations of higher degrees of negligence, or whether, as a general matter, allegations of negligence, in the business context, may have similar reputational consequences as allegations of intentional fraud.  See Baltimore County v. Cigna Healthcare, 238 F. App'x 914, 925 (4th Cir. 2007)(finding that the same reputational concerns were present in negligent misrepresentation as in intentional fraud)(in dissent).

Neither did the decision address whether negligent misrepresentation claims might qualify for heightened pleading under Rule 9(b)'s heightened pleading requirement for allegations of mistake.  Breeden v. Richmond Community College, 171 F.R.D. 189, 199 (M.D.N.C. 1997)(noting that rule 9(b) applies to allegations fraud and mistake and should therefore apply to negligent misrepresentation claims, which arise out of a party's misunderstanding of a pertinent fact)(abrogated by Baltimore County v. Cigna Healthcare, 238 F. App'x 914 (4th Cir. 2007)(finding that negligent misrepresentation claim did not require pleading with particularity but with dissent citing positively to Breeden); Baltimore, 238 F. App'x at 925 (noting that Rule 9(b) is not limited to intentional fraud because it covers "fraud and mistake")(in dissent).

Defendants contend, and Plaintiffs do not dispute that the viability of the negligent misrepresentation claim should be judged based on the laws of New York, Connecticut, and New Jersey, the three states in which the named Plaintiffs reside. Because the parties do not dispute the application of these bodies of law, this Court will apply them in assessing this claim.  See Transportes Ferreos de Venezuela  II CA v.NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001)(applying New Jersey law where there was no dispute as to its application).

In order to state a negligent misrepresentation claim, under all three states' laws, the plaintiff must allege, among other elements, (a) the furnishing of a false statement (Masone v. Levine, 382 N.J. Super. 181, 187 (N.J.Super.Ct.App.Div. 2005); Mandarin Trading, Ltd. V. Wildenstein, 944 N.E.2d 1104, 1109 (N.Y. 2011); Williams Ford, Inc. v. Hartford Courant Co., 657 A.2d 212, 220 (Conn. 1995)), (b) reasonable reliance on that statement (Id.), and (c) that the false statement was the proximate cause of the loss at issue.  McCabe v. Ernst & Young,

---

Finally, the decision did not address the notice concerns that also motivate the Rule.  Generally, the only elemental difference between a negligent misrepresentation and a fraud claim is that the latter requires a specific fraudulent intent.  In re Student Finance Corp., 02-11620, 2004 WL 609329, at *3 (D.Del. Mar. 23, 2004)("The only difference between an action for fraud and negligent misrepresentation is that, with a claim of negligent misrepresentation, the plaintiff need not plead that the defendant knew or believed this his or her statement was false or that she proceeded in a reckless disregard for the truth.").  Intent, unlike the other elements of a fraud claim, may be plead generally.  Rule 9(b)("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

LLP, 494 F.3d 418, 438 (3d Cir. 2007)(holding that negligent misrepresentation requires that the misrepresentation be the proximate cause – i.e. a substantial contributing factor to the loss); Amusement Indus., Inc. v. Stern, 786 F. Supp. 2d 758, 776 (S.D.N.Y. 2011)(holding that, under New York law, plaintiffs must allege transaction causation – that, but for the defendant's wrongful acts, the plaintiffs would not have entered into the transaction that resulted in their losses); Johnson v. Chesebrough-Pond's USA Co., 918 F. Supp. 543, 548-49 (D. Conn. 1996)(holding that, for a negligent misrepresentation claim under Connecticut law, a plaintiff must show at least "but for" causation).

Defendants argue, among other things, that Plaintiffs' negligent misrepresentation claim fails to meet Twombly/Iqbal's test for plausibility and fails to properly allege causation. First, with respect to Plaintiffs' claim of alleged misrepresentations concerning Cherokee's financial health, Plaintiffs have failed to point to any statements by Defendants concerning Cherokee's financial health that were false.  This deficiency is fatal to this claim of negligent misrepresentation.  Second, both that claim, and Plaintiffs' claim based on the alleged assurances of safety by Defendants, fail to adequately plead proximate causation.  As discussed

above, Plaintiffs have failed to plead that the alleged misrepresentations were the "but for" cause of the alleged injuries.  Therefore, Plaintiffs' negligent misrepresentation claim must be dismissed in its entirety on this basis.[8]

E.   Plaintiffs' Unjust Enrichment Claim

Plaintiffs' unjust enrichment claim is premised on the same conduct as their other claims.  Defendants argue that this claim must be dismissed for three reasons: (1) failure to satisfy Rule 9(b); (2) failure to establish, for the New Jersey Plaintiffs, that those Plaintiffs expected remuneration from Defendants at the time the deposits were made, and for the remaining Plaintiffs, failure to establish that the benefits conferred upon Defendants, the commissions paid to them by Cherokee, were direct; and (3) failure to meet Twombly/Iqbal.

1.   Defendants' Rule 9(b) Argument

This Court agrees with Defendants' first argument, in part.  To the extent Plaintiffs' claim is premised on

---

[8]   Defendants made two additional arguments in passing with respect to Plaintiffs' negligent misrepresentation claim: (1) that Plaintiffs failed to allege reasonable reliance in light of the disclaimer of reliance contained in the agreement with Cherokee; and (2) that Plaintiffs' negligent misrepresentation claim fails under New York law because New York law requires, and Defendants lacked, a special relationship of confidence and trust with Plaintiffs.  Because this Court dismisses this claim on other bases, it need not address these arguments. The Court notes, however, that, Defendants cited no authority for the former argument and little else beyond a bare citation for the latter.

If Defendants wish the Court to consider these arguments in the future, they should furnish the Court with appropriate authority and more detailed legal argument.

allegations sounding in fraud, it must be dismissed for failure
to satisfy the requirements of Rule 9(b) for the reasons
discussed above.  Similarly, however, as discussed above, to
the extent it is premised on allegations of negligence, it need
not satisfy Rule 9(b).

      2.   Defendants' Directness of Benefit / Expectation
         of Remuneration Argument

    With respect to Defendants' second argument, this Court
agrees, in part. Defendants again argue that Plaintiffs' unjust
enrichment claim's viability depends upon the law of the three
states in which the named Plaintiffs reside, with the named
Plaintiffs subject to the law of the state of their residency.
Again, because Plaintiffs do not dispute the application of
these laws to the named Plaintiffs, this Court will apply those
laws in considering the viability of Plaintiffs' claim in the
manner proposed by Defendants.  See <u>Transportes Ferreos</u>, 239
F.3d at 560.

      a.   New Jersey Law

    Under New Jersey law, the New Jersey Plaintiffs were
required, and failed, to allege that they expected remuneration
from Defendants when they made the purchases at issue.  <u>Amgro,
Inc. v. Lincoln Gen'l Ins. Co.</u>, 361 F. App'x 338, 346 n.10 (3d
Cir. 2010)(stating the general rule that, under New Jersey law,
an unjust enrichment claim requires that the plaintiff show

that it expected remuneration from the defendant at the time it conferred a benefit); In re Philips/Magnavox Television Litig., No. 09-3072, 2010 WL 3522787, at *10 (D.N.J. Sept. 1, 2010)(holding that a plaintiff must show that it expected remuneration at the time it conferred a benefit upon the defendant)(applying New Jersey law).  Therefore, dismissal of the New Jersey Plaintiffs' unjust enrichment claim is warranted.

> b.  New York Law

New York law, in contrast, allows for looser claims of unjust enrichment, allowing claims to proceed without privity, or "direct dealing".  Waldman v. New Chapter, Inc., 714 F. Supp. 2d 398, 403 (E.D.N.Y. 2010)[9].  What New York law does require is subject to some dispute.  While the New York Court of Appeals has made clear that the relationship between the parties cannot be "too attenuated" (Id. at 403-04 (citing to the New York Court of Appeals)), there is debate about the closeness of this relationship necessary to establish a claim.

---

[9]    Defendants cite several cases that appear to require a more direct relationship between the parties to state a claim for unjust enrichment under New York law.  Bangkok  Crafts Corp. v. Capitolo di San Pietro in Vaticano, 331 F. Supp. 2d 247, 256 (S.D.N.Y. 2004); Sperry v. Crompton Corp., 810 N.Y.S.2d 498, 500 (N.Y. App. Div. 2006); Sybelle Carpet & Linoleum of Southampton, Inc. v. East End collaborative, Inc., 562 N.Y.S.2d 205, 206-07 (N.Y. App. Div. 1990). These cases all pre-date the decisions of the New York Court of Appeals in Sperry v. Crompton Corp., 8 N.Y.3d 204 (N.Y. 2007) and Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173 (N.Y. 2011), in which the Court of Appeals made clear that such a direct relationship was not required.  Sperry, 8 N.Y.3d at 215 (rejecting a privity

See Georgia Malone & Co., Inc. v. Ralph Rieder, 86 A.D.3d 406 (N.Y. App. Div. 2011).

That debate centers on the decision of the New York Court of Appeals in Mandarin Trading Ltd. v. Wildenstein.  Id. There, the New York Court of Appeals held that, although privity was not required to sustain an unjust enrichment claim, a claim would not be supported where "the connection between the parties is too attenuated." 16 N.Y.3d 173, 182 (N.Y. 2011). The Court held that the unjust enrichment claim failed this requirement because it lacked "allegations that would indicate a relationship between the parties, or at least an awareness" by the defendant of the plaintiff's existence.  Id.  It further held that "there are no indica of an enrichment that was unjust where the pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement." Id. at 182.  Several courts have interpreted the decision as requiring that, to satisfy the relationship element, the plaintiff must allege more than mere awareness of the plaintiff by the defendant, but that the relationship could have caused reliance or inducement on the plaintiff's part.  Barbagallo v. Marcum LLP, No. 11-CV-1358, 2011 WL 5068086, at *13 (E.D.N.Y. Oct. 25, 2011); Georgia Malone, 86 A.D.3d at 409.  That notion was hotly disputed in dissent in Georgia Malone & Co., Inc. v.

---

requirement); Mandarin, 16 N.Y.3d at 182-83.

Ralph Rieder, with the dissent arguing that only knowledge or awareness of the plaintiff by the defendant was required. Id. at 500 (in dissent).

This Court interprets Mandarin to require a plaintiff to allege a relationship that is not overly attenuated and no more or less.[10]  While Mandarin made clear that a lack of awareness by the defendant of the plaintiff would doom the claim, it did not hold that the minimal showing of mere awareness would necessarily satisfy the relationship requirement.  Mandarin, 16 N.Y.23d at 182.  Neither did it hold that the far more substantial showing of "a relationship between the parties that could have caused reliance or inducement" was necessary to satisfy the relationship requirement.  Id.  The lack of a relationship capable of causing reliance or inducement was addressed in the context of assessing whether plaintiffs had alleged an enrichment that was unjust.  Id. at 182-83.  In that case, and on those facts, the lack of such a relationship was fatal to the plaintiff's claim that the enrichment would cause an injustice.  Id. ("Moreover, under the facts alleged, there are no indicia of an enrichment that was unjust where the pleadings failed to indicate a relationship . . .").

---

[10]   A same or similar approach appears to have been taken in Vertex Const. Corp. v. T.F.J. Fitness, L.L.C.. No. 10-CV-683, 2011 WL 5884209, at *5 (E.D.N.Y. Nov. 23, 2011).

Therefore, whether a plaintiff has alleged a sufficient closeness of relationship must be determined on the facts alleged.  Here, Defendants are alleged to have directly solicited Plaintiffs to make investments, Plaintiffs made the investments, and Defendants were compensated based on those investments with commissions.  On those facts, the relationship between the New York Plaintiffs and Defendants is not so attenuated as to require dismissal on this basis.  Even under the more exacting standard of a relationship capable of causing reliance or inducement, required by other courts but not this Court, Plaintiffs have alleged sufficient facts for the New York Plaintiffs to survive a motion to dismiss on this basis under New York law.

c.   Connecticut Law

Similarly, Connecticut law does not require that the benefit be conferred directly by the plaintiff on the defendant.  <u>Town of New Hartford v. Connecticut Resources Recovery Auth.</u>, 970 A.2d 592, 618 (Ct. 2009)( "Although unjust enrichment typically arises from a plaintiff's direct transfer of benefits to a defendant, it also may be indirect, involving, for example, a transfer of a benefit from a third party to a defendant when the plaintiff has a superior equitable entitlement to that benefit.").  Accordingly, the Court will

not dismiss the Connecticut Plaintiffs' unjust enrichment claim
on this basis.

   3.   Defendants' Twombly/Iqbal Argument

   Despite this Court's findings above, the unjust enrichment
claims must be dismissed on Twombly/Iqbal grounds.  Under all
three states' laws, a finding of unjust enrichment requires
that there be some injustice.  Banco Espirito Santo De
Investimento, S.A. v. Citibank, N.A., No. 03 Civ. 1537, 2003 WL
23018888, at *17 (S.D.N.Y. Dec. 22, 2003)(holding that, under
New York law, if there are no facts supporting a finding of an
injustice, then there can be no claim of unjust enrichment);
Cent. Reg'l Employees Benefit Fund v. Cephalon, Inc., No. 09-
3418, 2010 WL 1257790, at *5 (D.N.J. Mar. 29, 2010)(requiring
an injustice under New Jersey law); Town of New Hartford, 970
A.2d at 609 (requiring that retention of the benefit be unjust
under Connecticut law).

   Where, as here, Plaintiffs have failed to aver allegations
sufficient to support the underlying conduct on which the
unjust enrichment claim is based, there is no injustice and
Plaintiffs' unjust enrichment claim must be dismissed.  See
Steamfitters Local Union 420 Welfare Fund v. Philip Morris,
Inc., 171 F.3d 912, 937 (3d Cir. 1999)(dismissing unjust
enrichment claim where court had dismissed underlying tort
claims upon which it was based due to lack of causation); Noble

25

Sys. Corp. v. Alorica Cent., L.L.C., 543 F.3d 978, 987 (8th
Cir. 2008)(dismissing unjust enrichment claim where underlying
claims had been dismissed); Cleary v. Philip Morris Int'l, 656
F.3d 511, 517 (7th Cir. 2011)("What makes the retention of the
benefit unjust is often due to some improper conduct by the
defendant.  And usually this improper conduct will form the
basis of another claim against the defendant in tort, contract,
or statute. So, if an unjust enrichment claim rests on the same
improper conduct alleged in another claim, then the unjust
enrichment claim will be tied to this related claim—and, of
course, unjust enrichment will stand or fall with the related
claim."); Central Regional, 2010 WL 1257790, at *5 (dismissing
unjust enrichment claim where there was no showing of causation
in underlying torts); Allianz Risk Transfer v. Paramount
Pictures Corp., No. 08 Civ. 10420, 2010 WL 1253957, at *10
(S.D.N.Y. March 31, 2010)( "Here, because all underlying fraud
claims are to be dismissed, the claim for unjust enrichment
must also be dismissed.")(applying New York law); Delino v.
Platinum Cmty. Bank, No. 09-CV-00288, 2009 WL 2366513, at *8
(S.D.Cal. July 30, 2009)(dismissing unjust enrichment claim for
lack of a showing of unjustness, where the court had dismissed
plaintiffs' claim upon which the unjust enrichment claim was
predicated).

    F.   Plaintiffs' Class Allegations

Defendants have also moved for dismissal of Plaintiffs' class allegations.  Defendants argue that class treatment was inappropriate for two reasons: (1) that the class action was not superior to individual litigation because Plaintiffs' non-statutory state law claims would require complex choice of law issues; and (2) that common issues did not predominate because the alleged misrepresentations were non-uniform and because there were individualized issues of causation.

The Court need not resolve these issues at this time. Because this Court dismisses all of Plaintiffs' individual claims, and Plaintiffs' purported class has not yet been certified, Plaintiffs' class allegations must also be dismissed.  Bass v. Butler, 116 F. App'x 376, 385 (3d Cir. 2004)(dismissing class claim where individual claims had been dismissed pre-certification); In re Aspartame Antitrust Litig., No. 2:06-CV-1732, 2008 WL 4724094, at *8 (E.D.Pa. Aug. 11, 2008)(dismissing entire action where no class had been certified and all the claims of the class representatives had been dismissed); Kruse v. Wells Fargo Home Mortgage, Inc., No. 02-CV-3089, 2006 WL 1212512, at *9 (E.D.N.Y. May 3, 2006)(holding that, where the named plaintiffs are dismissed prior to class certification, the case must be dismissed as moot).

27

However, in the interests of judicial economy, the Court notes that it is highly skeptical of the suitability of Plaintiffs' claims for class treatment for two reasons.  First, Plaintiffs are unlikely to be able to satisfy the class action predominance requirement, which requires that common questions of law or fact predominate over individualized inquiries.  In re LifeUSA Holding Inc., 242 F.3d 136, 144 (3d Cir. 2001)(citing to Rule 23).  To the extent Plaintiff relies on claims of misrepresentation by Defendants in non-standardized communications, the alleged misrepresentations will require individualized proof.  Id. at 146-47 (3d Cir. 2001)(finding common issues did not predominate where alleged misrepresentations were non-uniform).  And all of Plaintiffs' claims of misrepresentation will require individualized causation inquiries.  Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 929 A.2d 1076, 1087 (N.J. 2007)(recognizing that proof of an NJCFA claim, like the one here, requires inquiry into the individualized decision-making of each purchaser); Nafar v. Hollywood Tanning Sys., Inc., 339 F. App'x 216, 222-23 (3d Cir. 2009)(same); Demmick v. Cellco P'ship, No. 06-2163, 2010 WL 3636216, at *17 (D.N.J. Sept. 8, 2010)(recognizing that the NJCFA causation element generally depends upon proof of the individual motivations of the plaintiffs).

Second, it is questionable whether Plaintiffs could meet Rule 23's requirement that the class action device be superior to individual litigation.  In re LifeUSA Holding Inc., 242 F.3d at 143-44.  The superiority of the class action here is undercut by the potential need to apply 50 different state laws to Plaintiffs' non-statutory state law claims.  Plaintiffs argue in a letter submission that the recently decided case of Sullivan v. DB Investments, Inc., 667 F.3d 273, 301-03 (3d Cir. Dec. 20, 2011) supports the notion that variations in state law do not defeat the commonality and predominance necessary to sustain a Rule 23(b)(3) class action.  But that case stands for two more limited propositions: (1) that those requirements are not defeated where the varying state laws can be grouped into common manageable patterns; and (2) those concerns, because they largely relate to manageability, are further diminished in the settlement class context, where there are no manageability issues.  Id.  Here, litigation of the Plaintiffs' non-statutory state law claims would likely require the application of many different states' laws with varying elements and it is unclear that these states could be successfully broken into subgroups with common elements.  Briefing the unjust enrichment and negligent misrepresentation claims of the three states at issue on the motion to dismiss has already exposed the difficulty in finding common ground between various states' common law

29

claims, given the oftentimes subtle differences between the states.   It is questionable, under these circumstances, in a non-settlement class, that the class action is a superior mechanism to litigate these claims, particularly given the fact that Plaintiffs' claims appear to be significant enough to support individual litigation.   In re Community Bank of N. Va., 418 F.3d 277, 309 (3d Cir. 2005)("The presence of certain class members with significant . . . claims may counsel against a finding of superiority, but these individuals can opt-out and pursue their claims individually."); Gray v. Bayer Corp., No. 08-4716, 2011 WL 2975768, at *11 (D.N.J. July 21, 2011)(raising the same concern in rejecting class certification).

IV. Conclusion

     For all these reasons, Plaintiffs' First Amended Complaint is DISMISSED without prejudice.   Because this Court cannot say that leave to amend would be futile, and given the liberal standard of amendment, Plaintiffs are granted thirty days to amend their complaint.   Prof'l Benefit Consultants, Inc. v. Claims and Benefits Mgmt., Inc., No. 4962, 2011 WL 6012932, at *4 (D.N.J. Dec. 1, 2011).   An appropriate order will follow the issuance of this Opinion.

                              s/Renée Marie Bumb
                              RENÉE MARIE BUMB
                              United States District Judge

Dated: March 14, 2012

30