NOT FOR PUBLICATION [Dkt. No. 96]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

DAVE DONACHY, et al.,

    Plaintiffs,

    v.

PLAYGROUND DESTINATION PROPERTIES, INC.,

    Defendant.

Civil Action No. 10-4038 (RMB/KMW)

**OPINION**

Appearances:

Benjamin F. Johns, Esquire
Joseph G. Sauder, Esquire
Chimicles & Tikellis, LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
    Attorneys for Plaintiffs

Aaron Van Nostrand, Esquire
Cory M. Gray, Esquire
Greenberg Traurig LLP
200 Park Avenue
Florham Park, New Jersey 07932-0677
    Attorneys for Defendant

**BUMB,** UNITED STATES DISTRICT JUDGE:

Plaintiffs Dave Donachy, Carol Donachy, Anthony DiMeglio, Susan DiMeglio, Andrew Wingfield, Charlene Wingfield, Richard Kucharski, and Suzanne Kucharski (the "Plaintiffs") have brought this action against Defendant Playground Destination Properties, Inc. (the "Defendant"). Defendant has moved to dismiss Plaintiffs' Fourth Amended Complaint (the "Complaint" or "FAC"). For the reasons that follow, Defendant's motion is GRANTED, in part, and DENIED, in part.

I.  Background

Plaintiffs are eight individuals from New Jersey who purchased condominium units in a luxury resort called "Veranda" from Cherokee Ltd. ("Cherokee").[1] (See FAC at ¶¶ 15-20). Defendant marketed the units on behalf of Cherokee and was compensated on a commission basis. (FAC at ¶¶ 18, 28.) Three provisions of Plaintiffs' agreements with Cherokee are relevant to this action. First, in each of Plaintiffs' agreements with Cherokee, the agreements contained an acknowledgment that:

> [N]either Cherokee nor any agent of [Cherokee] has made any representation which has influenced or induced the Purchaser to enter into this Agreement and that this Agreement is not being entered into in reliance on any information or forecasts of any nature whatsoever, including for the avoidance of doubt any promotional material provided by the Purchaser.

---

[1] The allegations contained in the Amended Complaint are accepted as true for purposes of the motion for judgment on the pleadings.

2

(FAC at Ex. B at 11.3.)[2]  Second, under the agreements, Plaintiffs' deposit could be utilized for costs related to the condominium development, but would otherwise be held by Cherokee's attorneys in an interest bearing account. (FAC at Ex. B. at 5.2.)  Third, the agreement provided that "all prior understandings and agreements are superseded by and are merged into this Agreement.  No written or oral representations, claims or inducements made by [Cherokee] or by [Cherokee's] representatives shall be binding on [Cherokee] unless set forth in the Agreement." (FAC at Ex. B at 15.4.)

In connection with their purchases, Plaintiffs were required to pay a deposit of 20% of the ultimate purchase price. (FAC at ¶ 20.) Plaintiffs allege that, prior to making the deposits, Defendant provided each Plaintiff, with the exception of the Donachys, with a marketing brochure.  (FAC ¶ 22.)  The brochures represented that: "Veranda will require only a 20% down payment and these funds will be held in an interest-bearing trust account, ensuring you are protected from any unforeseen circumstances, right through the construction period."  (FAC ¶ 22; see Pl. Ex. A to Compl.)[3] Plaintiffs also

---

[2]   The Plaintiffs attached a copy of the Donachys' agreement with Cherokee.  Because the agreement between the Donachys and Cherokee was attached to the Complaint, this Court may consider it on a motion to dismiss. See ALA, Inc., 29 F.3d at 859.  There is no dispute that the other Plaintiffs' agreements were substantively identical.

[3]   The brochure was attached as an exhibit to the Complaint.  This Court may consider materials attached to a complaint, like the brochure, on

allege that Defendant's representatives made additional assurances as to the safety of Plaintiffs' deposits both before and after the deposits were made.  With respect to the Defendant's representations pre-deposit, Plaintiffs allege that:

    (1)    in the months prior to the Donachys' purchase, Taz Brown ("Brown"), a representative of the Defendant, told the Donachys over the phone that the deposit would be safe "under any and all circumstances" and "no matter what" and that this was "a secure, no brainer" transaction and that the Donachys worried too much (FAC ¶ 34);

    (2)    in the months prior to the DiMeglios' purchase, Chad Rowe, a representative of the Defendant, told the DiMeglios over the phone that their deposit would be safe in all circumstances and e-mailed them, on May 28, 2003, that "[The Deposit is] secured under that contractors [sic] insurance policy, which covers buyers in the case of delay, disaster, weather, etc. On top of this you are covered in the developer's contract for purchase for 100% of your deposit upon default of contract" (FAC ¶¶ 45, 47);

    (3)    between May and July 2003, Brown corresponded with the Kucharskis and Brown described the deposit as being "very secure and safe under all circumstances" and, in addition, the Kucharskis were advised by a representative of the Defendant that the worst case scenario for them was their deposit would be tied up for a short period of time and ultimately returned to them if something went wrong with the Veranda project (FAC ¶¶ 61, 65); and

    (4)    the Kurcharskis relayed the information they received to the Wingfields, who relied upon it, in investing in the Veranda with the Kurcharskis (FAC ¶¶ 80-81).

---

a motion to dismiss.  See ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994)("When reviewing a complaint, a court should consider not only the allegations contained in the complaint itself but also the exhibits attached to it which the complaint incorporates pursuant to Fed. R. Civ. P. 10(c).").

With respect to Defendant's representations post-deposit, Plaintiffs allege that Defendant represented to them that the project was moving forward and Plaintiffs' deposits were not at risk. (See e.g. FAC ¶¶ 37, 38, 50, 51, 71, 72, 85, 86.) Finally, Plaintiffs also allege that Defendant made material omissions in failing to inform them of the risk that their deposits would be lost. (FAC ¶ 94.)

Notwithstanding these assurances, Cherokee exhausted the deposits and filed for bankruptcy without completing the condominium project. (FAC ¶ 23, 24.) The named Plaintiffs subsequently filed suit alleging that Defendant was deceptive in the marketing of the project. Their Complaint asserts two claims: (1) negligent misrepresentation; and (2) violation of the New Jersey Consumer Fraud Act (the "NJCFA").

II. Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sheridan v. NGK Metals Corp., 609 F.3d 239, 262-63, n.27 (3d Cir. 2010) (quoting Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

5

--

defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 129 S.Ct. at 1949).

The Court conducts a three-part analysis when reviewing a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009)(" . . . [A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.").

Claims premised on fraud must, under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), do more. Plaintiffs claiming fraud or mistake must allege, at a minimum, the "who, what, when, where and how" of the events at issue, "or otherwise inject precision or some measure of substantiation into a fraud allegation." In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276 (3d Cir. 2006); Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

III. Discussion

Defendant has moved for dismissal of both of Plaintiffs' claims. The Court addresses each claim in turn.

A.  Negligent Misrepresentation Claim

In order to state a negligent misrepresentation claim, a plaintiff must allege that: (1) the defendant negligently provided false information; (2) the plaintiff was a reasonably foreseeable recipient of that information; (3) the plaintiff justifiably relied on the information; and (4 the false statements were a proximate cause of the plaintiff's damages. Prudential Ins. Co. of Am. v. Goldman, Sachs & Co., 12-6590 SDW, 2013 WL 1431680, at *27-28 (D.N.J. Apr. 9, 2013)(citing McCall v. Metro. Life Ins. Co., 956 F. Supp. 1172, 1186 (D.N.J. 1996)). With respect to the third element, "[i]t is manifestly unreasonable for a party to rely on prior oral statements when express language of the contract is written" explicitly disclaiming any reliance on a previous communication. RNC Sys. v. Modern Tech. Group, Inc., 861 F. Supp. 2d 436, 454 (D.N.J. 2012)(quoting Alexander v. Cigna Corp., 911 F. Supp. 427, 436 (D.N.J. 1998)).

Defendant argues that it is entitled to dismissal of Plaintiffs' negligent misrepresentation claims because Plaintiffs' agreements with Cherokee preclude Plaintiffs from demonstrating the reliance element of a negligent misrepresentation claim and on a number of other grounds.

7

Because this Court agrees that the agreements preclude Plaintiffs from demonstrating reasonable reliance as required, it does not address these other grounds.

On the facts alleged, and considering the Agreement's integration clause, reliance disclaimer, and specific provision allowing for the deposit to be used to finance construction, any reliance by Plaintiffs was unreasonable.[4] Blanos v. Penn Mut. Life Ins. Co., No. 09-5174, 2010 WL 143670, at *6-7 (D.N.J. Jan. 12, 2010) (holding that the clause which stated that the contract was "entire agreement and understanding" barred any claims based on representations not included in the terms of the contract); Chen v. HD Dimension, Corp., No. 10-683, 2010 WL 4721514, at *6-7 (D.N.J. Nov. 15, 2010)(finding the reasoning of Blanos v. Penn Mut. persuasive); Jackson Hewitt Inc. v. Childress, No. 06-0909, 2008 WL 834386, at *11-12 (D.N.J 2008). Accordingly, the Plaintiffs' negligent misrepresentation claim is DISMISSED.

B. NJCFA Claim

In order to state a NJCFA claim, the plaintiff must show three elements: (1) unlawful conduct by the defendant; (2) an

---

[4] Plaintiffs' cited authority in opposition is inapposite. The cases Plaintiffs rely on dealt with the admissibility of allegedly fraudulent statements, not with whether reliance on those statements was reasonable. McCarthy v. Hamilton Farm Golf Club, LLC, No. 11-1565, 2011 WL 1775728, at *5 (D.N.J. May 9, 2011); Travelodge Hotels Inc. v. Honeysuckle Enterprises, Inc., 357 F. Supp. 2d 788, 795 (D.N.J. May 18, 2005); St. Mathew's Baptist Church v. Wachovia Bank Nat., 2005 WL 1199045, at *4-5 (D.N.J. 2005).

ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. See Francis E. Parker Mem. Home, Inc. v. Georgia-Pacific LLC, 2:12-CV-02441 ES, 2013 WL 2177974, at *10 (D.N.J. May 20, 2013)(citing International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., 929 A. 2d 1076 (2007)).

Defendant has moved for dismissal on five grounds. It argues that: (1) Plaintiffs' claim is barred by the agreements between Plaintiffs and Cherokee; (2) Plaintiffs failed to adequately plead unlawful conduct; (3) Plaintiffs failed to plead a false statement with respect to the brochure-based allegations; (4) Plaintiffs failed to plead causation; and (5) certain of Plaintiffs' alleged misstatements were non-actionable puffery. The Court addresses each argument in turn.

1. Defendant's Contract Argument

Defendant argues that that same language in the agreements that precludes Plaintiffs' negligent misrepresentation claim also precludes Plaintiffs' NJCFA claim. This Court disagrees.

Dismissal of Plaintiffs' negligent misrepresentation claim was premised on an inability to demonstrate reasonable reliance. But Plaintiffs need not show reliance in order to prevail under the NJFCA. See Varacallo v. Massuchetts Mut. Life. Ins. Co., 752 A.2d 807, 813-14 (N.J. Sup. Ct. App Div. 2000); Cox v. Sears Roebuck & Co., 138 N.J. 2, 21-22 (N.J.

9

1994). And Defendant cites no authority for the proposition that the agreements somehow preclude demonstration of the elements of an NJCFA claim. Accordingly, this Court will not dismiss Plaintiffs' NJCFA claim on this basis.

### 2. Defendant's Unlawful Conduct Argument

Defendant argues that Plaintiffs failed to plead unlawful conduct by Playground with the requisite particularity.

The unlawful conduct element of an NJCFA claim may be satisfied through either "an affirmative misrepresentation, even if not made with knowledge of its falsity or with an intent to deceive; the knowing omission or concealment of a material fact, accompanied by an intent that others rely upon the omission or concealment; or a violation of a specific regulation promulgated under the NJCFA." Billings v. Am. Exp. Co., No. 10-3487, 2011 WL 5599648, at *9 (D.N.J. Nov. 16, 2011).

Claims under the NJCFA are subject to the heightened pleading requirements of Rule 9(b). FDIC v. Bathgate, 27 F.3d 850, 876 (3d Cir. 1994). In order to satisfy the heightened pleading standard expressed under Rule 9(b), the plaintiff must plead with particularity the circumstances constituting a fraud. Fed. R. Civ. P. 9(b). This can be accomplished by pleading "the date, time, and place" of the fraud or otherwise injecting "precision or some measure of substantiation into the

10

allegations. <u>Slimm v. Bank of Am. Corp.</u>, CIV. 12-5846 NLH/JS, 2013 WL 1867035, at *13 (D.N.J. May 2, 2013)(citing <u>Frederico v. Home Depot</u>, 507 F. 3d 188, 200 (3d. Cir. 2007)). A plaintiff alleging fraud must state the circumstances of the fraud with "sufficient particularity to place the defendant on notice of the precise misconduct with which he is charged." <u>Lum v. Bank of America</u>, 361 F.3d 217, 223-24 (3d Cir. 2004).

Here, Plaintiffs have made a number of different allegations of misrepresentations. The Court addresses each group of misrepresentations in turn. With respect to Plaintiffs' claims based on the brochure, those claims are sufficiently pled. While only the Kucharskis alleged the precise time at which the brochure was given to them, Plaintiffs have nonetheless injected enough precision into their claims to satisfy Rule 9(b). Plaintiffs alleged a specific portion of a specific document, the specific representative that provided them the brochure, and generally when the misrepresentation was made.

With respect to the other alleged oral and written misrepresentations, these alleged misrepresentations are also adequate to survive Rule 9(b) scrutiny. Each Plaintiff alleged: (1) the specific Playground representative who made the alleged misrepresentation; (2) who the misrepresentation was made to;

11

(3) the contents of the misrepresentation; and (4) the general timeframe of the misrepresentation.

However, with respect to the alleged omissions, Plaintiffs have not fulfilled their burden. Plaintiffs were required, and failed, to allege the material facts Defendant knew and failed to disclose. See generally, In re Magnesium Oxide Antitrust Litig., No. 10-5943, 2011 WL 5008090, at *26 (D.N.J. Oct. 20, 2011). Plaintiffs have, however, offered nothing more than conclusory assertions that Defendant knew and failed to disclose material facts concerning the safety of their deposit and the financial health of Cherokee. Accordingly, any claim related to alleged omissions by Defendant is DISMISSED.

### 3. Defendant's False Statement Argument

Defendant argues that, to the extent Plaintiffs' claims are premised on the brochure, Plaintiffs have failed to set forth a false statement, as required. It contends that the representation in the brochure that the deposits would be safe from all unforeseen circumstances is true because the threat that the deposit would be exhausted was contemplated and foreseen, not unforeseen. This Court disagrees.

"The fact that" a statement is "literally true does not mean that" it "cannot be misleading to the average consumer" and actionable. Miller v. Am. Family Publishers, 663 A.2d 643, 648 (N.J. Super. Ch. 1995). And whether a statement is

12

misleading is generally a question of fact.  Stewart v. Smart Balance, Inc., No. 11-6174, 2012 WL 4168584, at *9 (D.N.J. June 26, 2012).

Here, while Defendant's argument may be true in a strict technical sense, that does not necessarily mean the brochure would not be misleading to an average consumer.  It may very well be.  Consumers do not typically read brochures in this sort of hyper-technical fashion.  It is plausible that they would instead read the brochures to be an assurance of safety under all circumstances.  Because the question of whether a statement is misleading is generally a question of fact, and because Plaintiffs have plausibly alleged that the brochures were misleading, it would be improper to dismiss the brochure-based claims on this basis at this time.  Accordingly, Defendant's motion to dismiss the brochure-based claims on this basis is DENIED.

    4.    Defendant's Causation Argument

Defendant argues that the Plaintiff has failed to adequately allege a "causal relationship" with sufficient specificity in order to comport with the standard expressed under Rule 9(b).

Allegations that a plaintiff would not have purchased a product "but for" the misrepresentation or that they purchased the product "because of" the misleading claim, are sufficient

13

to plead causation at this stage. See <u>Stewart v. Smart Balance, Inc.</u>, No. 11-6174, 2012 WL 4168584, at *9 (D.N.J. June 26, 2012); <u>Mason v. Coca-Cola Co.</u>, 774 F. Supp.2d 699, 704 n.3 (D.N.J. 2011); <u>Maniscalco v. Brothers Int'l Corp. (USA)</u>, 627 F. Supp.2d 494, 503 (D.N.J. 2009).

With respect to Plaintiffs' allegations of omissions, those claims have already been dismissed. With respect to Plaintiffs' allegations of affirmative misrepresentations prior to the deposits, each of the Plaintiffs has alleged that "but for" these misrepresentations they would not have contracted with Cherokee. That is sufficient for these claims. With respect to Plaintiffs' allegations that these type of assurances were repeated after the deposits were made, Plaintiffs have failed to show the requisite casual connection. Accordingly, Defendant's motion for dismissal on this basis is GRANTED to the extent Defendant seeks dismissal of the post-deposit based claims. It is otherwise denied.

    5.    <u>Defendant's Puffery Argument</u>

Defendant argues that the specific allegations by the Donachys, Kucharskis and the Wingfields, of oral misrepresentations by Defendant, do not violate the NJCFA because they were mere puffery.

The NJCFA distinguishes between actionable misrepresentations of fact and puffery. <u>See</u>, <u>e.g.</u>, <u>In re</u>

14

Toshiba Am. HD DVD. Mktg. and Sales Practice Litig., CIV 08-939 (DRD), 2009 WL 2940081 (D.N.J Sept. 11, 2009). Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language. Castrol, Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir. N.J. 1993). The distinguishing characteristics of puffery are vague, highly subjective claims, as opposed to specific, detailed factual assertions. See, In re Toshiba. Statements constituting puffery are not actionable because an average consumer would not interpret them to be misleading. See Slack v. Suburban Propane Ptnrs., L.P., CIV.A 10-2548 JLL, 2010 WL 3810870, at *5 (D.N.J. Sept. 21, 2010) (holding that statements which said "when you shop at Suburban Propane, you get…the best value!" was not a statement of fact but non-actionable puffery); Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, L.L.C, 655 F. Supp. 2d 473, 518 (D.N.J)(noting that statements that a location constituted a "good place to raise children" was not actionable); Bubbles N' Bows, LLC v. Fey Publ. Co., CIV A 06-5391 FLW, 2007 WL 2406980, at *9 (D.N.J. Aug. 20, 2007)(finding that statements on the website which indicated "if the customer isn't smiling, fix it" are simply too puffery…for the average consumer to interpret these statements as misleading)). "[G]eneral optimistic statements are non-actionable puffery." See Stichting Pensioenfonds ABP v. Merck & Co., No. 05-5660, 2012 WL 3235783,

15

at *6 (D.N.J. Aug. 1, 2012)(finding that Merck statements describing the condition of their expiring patents to be "on target" are non-actionable). In contrast, claims that explicitly or implicitly address product attributes of importance to customers are not puffery. In re Toshiba, at *10.

Reviewing all of the alleged misrepresentations statements, only one amounts to puffery. Defendant's alleged statement to the Donachys that the transaction was a "secure, no-brainer" is puffery. That representation is too broad and vague for a consumer to rely upon. However, the remaining statements at issue here – statements like "your deposit will be safe under all circumstances" or from all "unforeseen circumstances" are not puffery. They relate to a specific product attribute of importance to the customer – the safety of the deposits – and definitively indicate that they are not at any risk. Accordingly, Plaintiffs' NJCFA claim is dismissed to the extent it is premised on allegations that Plaintiffs were told the transaction was "secure" or a "no-brainer." Defendant's motion to dismiss on this basis is otherwise denied.

IV. Conclusion

For the reasons set forth above, the Defendant's motion to dismiss is GRANTED, in part, and DENIED, in part, as described above.

16

            <u>s/Renée Marie Bumb</u>
            RENÉE MARIE BUMB
            UNITED STATES DISTRICT JUDGE

Dated: <u>July 19, 2013</u>